THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant, *v.* CATHERINE T. A. MALONEY, Respondent.

**Condemnation proceedings — measure of damages — change of grade of roadbed — evidence.**

1. A railroad company having acquired by condemnation proceedings a right of way through private lands in the country and the owner having been awarded damages for the land taken and damages incidental thereto, the company is not thereafter confined to the grade of its roadbed shown on the map and profile filed in the proceeding, but it may subsequently as its needs require depress or elevate its tracks without further compensation to the owner of the land or to his successor. In a subsequent proceeding, therefore, by the company to acquire a wider strip through the same lands it was error for the commissioners to receive evidence and award damages to the owner on the theory that the present improvements contemplated also the raising of the grade of the old roadbed.

2. The measure of compensation to the owner is the fair market value of the land before the property was taken and the fair market value of the property remaining after the appropriation of a portion thereof. Evidence may also be received as to the deposit of materials upon the land which might enhance its market value beyond its present use. But evidence of speculative and hypothetical uses should not be indulged in, and the admission of evidence, as in the present case, where clay and sand were found on the land, to the effect that the owner might establish brick yards and docks, equip them with the necessary machinery and lease them for a long period of years with large returns by way of rentals and royalties, is error.

3. The question in such a case is not merely whether the property is peculiarly adapted for the special use claimed for it, even with deposits upon it such as have been enumerated, but whether or not purchasers can be found who would pay more for it because of the adaptability to the use to which the same might be applied.

*N. Y. C. R. R. Co.* v. *Maloney*, 199 App. Div. 937, reversed.

(Argued October 6, 1922; decided November 21, 1922.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 6, 1921, which unani-

mously affirmed a final order of Special Term confirming the report of commissioners in condemnation proceedings.

*Robert Wilkinson* for appellant. The theory and measure of damages adopted by the commissioners was erroneous in law. (*Birrell* v. *N. Y. & Harlem R. R. Co.*, 41 App. Div. 506; *Bennett* v. *Ill. R. R. Co.*, 181 N. Y. 431; *Perry* v. *Lehigh Valley R. R. Co.*, 9 Misc. Rep. 515; *Townsend* v. *New York Central R. R. Co.*, 56 Misc. Rep. 253; *Williams* v. *Clark*, 140 Mass. 238; *Cassidy* v. *Old Colony R. R. Co.*, 141 Mass. 174; 2 Lewis on Em. Dom. §§ 481, 584, 1263; *Nicol* v. *Erie R. R. Co.*, 12 N. Y. 121; *Vail* v. *L. I. R. R. Co.*, 106 N. Y. 283; *Concklin* v. *N. Y. C. & H. R. R. R. Co.*, 149 App. Div. 742; *People ex rel. Frost* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 187.)

*Harry C. Barker* and *Samuel K. Phillips* for respondent. On the record herein the commission in reaching its award adopted and proceeded upon a theory and measure of damages which was correct as a matter of law. (*Matter of N. Y. & B. R. R. Co.*, 62 Barb. 85; *Birrell* v. *N. Y. & H. R. R. Co.*, 41 App. Div. 506; *Townsend* v. *N. Y. C. R. R. Co.*, 56 Misc. Rep. 253; *Matter of Bronx Parkway Comm.*, 191 App. Div. 212; 192 App. Div. 412.)

Hogan, J. The Hudson River Railroad Company, predecessor of the plaintiff, appellant herein, during the year 1848 was engaged in the construction of a railroad from the city of New York to a point opposite the city of Albany on the north, and later constructed a double-track railroad between said termini practically as the same existed at the time of the commencement of this proceeding.

In 1848 one Van Amburg was the owner of two certain parcels of land in Dutchess county on the line adopted

14

for the contemplated railroad, which parcels of land are hereinafter referred to as the north and south parcel, said parcels being substantially one mile apart. Between said parcels was certain land which is not involved in this proceeding.

The lands owned by Van Amburg were located easterly of the Hudson river. With the exception of some cleared land which adjoined the highway which was some three hundred feet from the river and approximately from twenty-five to two hundred feet above it, it sloped toward the river and was covered with scrub, bushes and undergrowth, high hills of dirt and rock divided by gullies and considerable ledge rock outcropping from the surface.

In 1848 the predecessor of plaintiff acquired title through condemnation proceedings to a strip of land on the south parcel of Van Amburg's property near to the river, seventy-three feet in width, in part through a bay the bottom of which was mud, some feet below the surface, and for sixty-six feet in width through a rock cut some seventy feet in height, the west or river side of which ran into the river; also from the north parcel a strip of land seventy-three feet in width at the southerly side and eighty-three feet through a rock cut which was seventy feet in height on the easterly side and from one to thirty-two feet in height on the rear or river side. The actual cuts were about thirty feet in width. The level of the tracks of the railroad company as laid upon the strips of land acquired from Van Amburg has since been raised between three-tenths and seven-tenths of a foot on the south parcel and one and three-tenths feet and two feet on the north parcel, and an elevation of two and one-half feet and four and eight-tenths feet was proposed but not made.

The defendant herein succeeded to the title of the remaining lands owned by Van Amburg. The present proceeding was instituted by the railroad company in June, 1912, to acquire two strips of land on each side

of its original right of way and upon which it was operating its trains.    At the south end, on the west or river side, a strip thirty-seven feet in width by sixteen hundred feet in length wholly under water save at the rock cut was sought to be acquired.   Upon the easterly side a strip thirty-four feet wide by three hundred sixty feet in length, all of which save eighty feet is on top of the east side of the rock cut, was desired in the proceeding.

Upon the north parcel was sought by the railroad company an outside strip forty-seven feet wide by five hundred feet in length, substantially all rock, and an inside strip forty feet in width at a point designated as a cartway south of the cut and thence running over the cut some five hundred feet.

Coincident with the commencement of the present proceeding in June, 1912, the railroad company procured an order of the court confirming it in the possession of the lands, and immediately proceeded to grade for a roadbed and the construction of two additional tracks upon the westerly or river side of its then existing roadbed upon which two tracks had been established under the condemnation proceeding of 1848.   The new tracks were slightly elevated above the existing tracks though below a level originally contemplated, and thereafter the level of the old or existing tracks was elevated to correspond with the newly-constructed tracks.

In 1912 commissioners were appointed to appraise the damages sustained by defendant.   The first meeting of the commissioners was held November 9th, 1912.   Numerous hearings were thereafter held and on March 24th, 1920, a final report was made wherein defendant was awarded damages in the sum of $32,500.   The report of the commissioners, which was supplemented by two additional reports, was confirmed by the Special Term, which order of confirmation was unanimously affirmed by the Appellate Division.   The plaintiff railroad company pursuant to permission granted by this court appeals to this court

and presents for our consideration alleged errors in the admission of evidence upon the subject of damages arising upon exceptions taken thereto. In a review of the questions presented it will be desirable to bear in mind the general description of the property owned by defendant to which reference has hereinbefore been made.

On behalf of the railroad company it is contended that the commissioners erred in the reception of evidence over objection and exception, i. e., that plaintiff had elevated its two tracks above the grade upon which the same were laid pursuant to the condemnation proceeding of 1848, the effect of which elevation resulted in increased damages generally and particularly to the land of defendant not condemned by reason of the alleged interference with the right to cross the tracks of the railroad and thus have access to the Hudson river; that plaintiff had a legal right to elevate its tracks without liability therefor and that such damages claimed by defendant covered prospective as well as present damages. It is further contended that the damages awarded by the commissioners are based upon conjectural estimates and opinions concerning the adaptability of the premises for the manufacture of brick, included the possible erection of a brick manufacturing plant, equipment of the same, the erection of docks on the river front for shipment of brick, together with the profit that might be derived therefrom.

We shall first consider the question of elevation of the tracks originally constructed by the railroad company following the Van Amburg condemnation proceeding in 1848.

Upon the first hearing before the commissioners in 1912, counsel for defendant offered in evidence all the papers on file in the Dutchess county clerk's office in the Van Amburg (1848) proceeding, " for the purpose of showing what rights the plaintiff now has, in addition to showing what additional burdens will be placed on the property by this proceeding and as showing the present rights of plaintiff."

The commissioners reserved decision at that time but subsequently admitted the judgment roll in evidence over the objection and exception of counsel for plaintiff.

The purpose of the evidence and the effect intended to be derived therefrom is manifest from an examination of the record. Counsel for defendant sought by the evidence to establish that the railroad company in the Van Amburg proceeding acquired solely a right to maintain its roadbed and tracks at a specific elevation by reason of a recital in the final order in the Van Amburg proceeding which after reciting that the railroad company had presented a petition setting forth that the lands therein to be taken are described on maps attached thereto " and that the grade by which the said railroad at the center line is to be constructed upon such piece of land, is also indicated upon such maps with reference to the present surface of such piece of land showing the extent to which such surface is to be raised or reduced by the construction of such railroad." Further, counsel for defendant when the judgment roll was offered in evidence requested the commissioners to direct counsel for the railroad company " to state for the guidance of the commissioners in fixing the damages that may be sustained by the owner in this proceeding, whether the railroad company in making the addition or improvement for which the land of defendant is to be taken, intends to raise or lower the grade of the road in front of her lands and if so how much and at what points." Counsel for plaintiff declined to answer the question.

Defendant thereupon called as a witness the division engineer of plaintiff and the witness produced a plan of the proposed work to be carried out which showed the general layout of the construction, the proposed additional tracks and changes in grade.

While the plan contemplated that the tracks of the railroad company were to be elevated two and one-half feet at the south parcel and four and eight-tenths feet

at the north parcel, the tracks as matter of fact were only elevated three-tenths to seven-tenths of a foot on the south parcel and one and three-tenths feet to two feet on the north parcel.

The defendant then called witnesses and propounded to them a question based upon the maps filed by the railroad company and the " testimony showing a proposed increase in elevation of two and one-half feet of the tracks over the level that they maintained at the time this proceeding was commenced * * * taking the changes proposed by the railroad company into consideration what would the property be worth after these changes were made between a willing buyer and a willing seller? " One of the commissioners inquired of one witness whether or not he had taken into consideration the right of the owner to have an adequate crossing as provided by statute, to which the witness replied " yes." Objections to the questions were timely made, overruled and exceptions noted.

That the witnesses in forming an opinion as to the damages to defendant in this proceeding took into consideration the elevation of the tracks two and one-half feet on plaintiff's right of way acquired by it in 1848 is undisputable. Nevertheless, counsel for defendant urges that the commissioners in the award made did not take into consideration an increase in the elevation of the tracks of the railroad company. No denial is or can be made that the record discloses that the commissioners over objection and exception permitted witnesses to take into consideration such increase of elevation of the tracks in forming opinions upon value as bearing upon the question of damages. The admission of the judgment roll in the Van Amburg proceeding justifies an implication that they were in accord with the view of counsel for defendant, that by reason of the recitals in the final order in the Van Amburg proceeding, hereinbefore referred to, the railroad company did not have a legal right to increase

the elevation of the tracks above the grade established by it under the Van Amburg proceeding without compensation in damages to defendant, the present owner.

Whether or not the commissioners did or did not take into consideration, in forming their opinion upon the subject of damages, an increase in elevation of the grade and tracks constructed following the 1848 condemnation may be determined from the reports made by them in this proceeding. In their first report they awarded defendant $32,500 damages. Two. supplemental reports were subsequently made by them. In their first supplemental report they were required to answer certain questions submitted by counsel for the railroad company. One bearing upon the question under consideration was " Did the commission in reaching its award include therein any damages based on the assumption that by the final order entered in the so-called Van Amburg condemnation by which the railroad acquired its original right of way, the railroad only acquired the right to construct and operate its railroad and the appurtenances thereto, upon and at the grade shown by the profile upon the map referred to in said final order? "

In response to such question the commissioners replied in a supplemental report under date of February 5th, 1920: " They did, however, in their general award consider the question of the extra cost and *damage imposed upon the land owner* by reason of the raising of the grade bed of the railroad, and the acts necessary and incidental thereon as appears by the testimony in this proceeding, and included the same in their general award."

Thereafter on March 24, 1920, after hearing counsel for both parties, the commissioners made a further supplemental report in which they stated that they had in arriving at their judgment of an award of $32,500, examined the decree in the so-called Van Amburg condemnation and " Pertaining to the aforesaid decree (final order in original condemnation proceedings of 1848)

the commissioners say that they have not passed upon the legal effect of said decree in this condemnation proceeding in any way. The commission has not undertaken to determine whether the railroad company had a right under the Van Amburg decree to raise the grade." Further the commission stated they did "not believe it to be their duty or incumbent upon them to set forth in detail all the items which go to make up the sum total of their award, nor those items which were included in the questions propounded by the plaintiff's attorney" and declined to further amend, supplement or explain their award further than they had already done.

Reading the two supplemental reports of the commissioners together the conclusion is irresistible that damages were awarded the defendant owner by reason of the elevation of the roadbed and tracks of the railroad company upon its original right of way without first considering the question as to whether or not the railroad company had as matter of law a right to elevate the tracks on the original right of way without liability for damages therefor. Counsel for the company throughout the proceedings had argued that the railroad company had a right to elevate its tracks without compensation and cited decisions of the courts in support thereof.

The Hudson River Railroad Company, the predecessor of plaintiff, as a step in the condemnation proceeding of 1848 filed a profile and map as it was by law required to do. Van Amburg, the then owner of the property, was awarded damages for the land taken and damages incidental thereto, based upon a roadbed to be constructed as shown on the map so filed. The grade established at that time was not one to be forever adhered to; on the contrary, it was subject to be depressed or elevated as experience and the needs of the company in service and safety of the public required without further compensation to the owner of the land condemned or his successor in title. (*Bennett* v. *L. I. R. R. Co.*, 181 N. Y. 431;

1922.]  Opinion, per Hogan, J.  [234 N. Y. 208]

*Leffmann* v. *L. I. R. R. Co.*, 120 App. Div. 528; affd., on opinion below, 197 N. Y. 513; *Matter of Grade Crossing Comrs., Buffalo*, 209 N. Y. 139; *Matter of Grade Crossing Comrs., Buffalo*, 166 App. Div. 956; affd., 215 N. Y. 729.)

The railroad company having a legal right to elevate its existing tracks it was error for the commissioners to receive evidence of damages in part due to an increase in the grade of such tracks.

As the order herein must be reversed, we deem it desirable to call attention to evidence admitted in this proceeding likewise applicable to the question of damages. Omitting a detailed statement of the evidence, portions of which were not objected to, other parts of which were duly objected to and exceptions noted, the same will be briefly summarized. At the outset, the general description of the land hereinbefore described must be borne in mind. But little or any of the land of the defendant has been cultivated or improved. Witnesses called in her behalf testified that as land the premises were of little value, viz., twenty-five or thirty dollars an acre. So far as the record discloses the land had not been devoted to any particular use.

In this proceeding, however, the defendant was permitted to establish by several witnesses that borings made upon the lands disclosed deposits of clay and sand adapted for the manufacture of brick; that brick yards could be established on the northerly and southerly tracts, buildings erected, machinery installed, and as to the number of millions of brick that might be produced annually, that a suitable dock for shipment might be erected; that the land thus improved could be utilized for the manufacture of brick upon a royalty rental basis, in substance rented to a tenant who would pay ten per cent annually upon the cost of the improvement and a further royalty of from forty to sixty per cent per thousand on brick manufactured, and as bearing upon the southerly

parcel that the quantity of clay to run a four-machine plant producing twelve millions brick per season for thirty-six years or more was available.

The measure of compensation in a proceeding like the present one is the fair market value of the land before the property was taken and the fair market value of the property remaining after the appropriation of a portion thereof. Notwithstanding that the owner of land is not limited in compensation to the use which he makes of his land, nevertheless it is the market value of the land which controls. As bearing upon the question of market value, the owner is privileged to offer evidence as to deposits of certain materials upon the land which might tend to enhance the market value beyond the purposes for which the same was used. In the present case, however, the values sought to be established were purely speculative and hypothetical. They were based upon the proposition that because deposits of clay and sand were to be found upon the land, the owner if she should establish brick yards thereon, erect buildings and equip them with necessary machinery for the manufacture of brick covering a period of thirty-five or forty years, and able to find a tenant who would pay her annually ten per cent on the sum invested and a royalty of forty to sixty per cent on a possible sale and manufacture of millions of brick, would thereby be enabled to make a large net return on the property. This evidence is in excess of the rule of the measure of damages properly applicable to a case like the present one, and as suggested was purely hypothetical and, therefore, improperly received. The question in such a case is not merely whether the property is peculiarly adapted for the special use claimed for it, even with deposits upon it such as have been enumerated, but whether or not purchasers can be found who would pay more for it because of the adaptability to the use to which the same might be applied.

For the reasons stated the order of the Appellate

Division and the order of the Special Term of confirmation should be reversed and the proceedings remanded to the Special Term for the appointment of new commissioners to ascertain compensation to be made to owners, with costs in all courts to the appellant.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Orders reversed, etc.