THYRZA BENSON FLAGG FOWLER, Individually, and Others, Appellants, *v.* THE STATE OF NEW YORK, Respondent. (Claim No. 18339.)

GEORGE MAURE, Claimant, *v.* THE STATE OF NEW YORK, Respondent. (Claim No. 18456.)

Third Department, December 30, 1931.

*Masten & Nichols* [*John T. Norton* of counsel], for the appellants.

*John J. Bennett, Jr., Attorney-General* [*James Gibson, Assistant Attorney-General,* of counsel], for the respondent.

HILL, J. Claimants have appealed from a decision of the Court of Claims and the judgment entered thereon dated May 28, 1931, awarding them $260,750.64, with interest from August 15, 1924, to March 21, 1927, as compensation for 1,777.076 acres of land located on Montauk peninsula appropriated on August 15, 1924, by the Long Island State Park Commission. Prior to the appropriation, claimants owned two parcels of land, one of about 1,500 acres at the easterly point of the peninsula and Long Island; the other of over 4,000 acres a few miles westerly from the first, occupying the entire width of the peninsula. Its western boundary was along the easterly shore of Napeague harbor and thence southerly across a narrow neck of land to the ocean. The easterly boundary was from the ocean to the sound through about the center of Fort pond. The Commission appropriated 76 acres from the first parcel at the extreme easterly point, having about 3,700 feet of water front and a depth of 800 feet from the ocean. This was substantially all of the water frontage owned by the claimant at the extreme point of the island. The unappropriated part of this parcel was cut off from the water front to a considerable extent by lands previously sold. From the map presented on the argument, it appears that this parcel still retained about 6,000 feet of water front, about two-thirds on Block Island sound and one-third on the ocean. The westerly 1,701 acres was appropriated from the second parcel. It had a total water frontage of about 35,950 feet.

The argument by claimants that the land appropriated by the State had a greater value per acre than the remainder is borne out by the evidence, particularly because water frontage is desirable in connection with land of this character. The number of witnesses as to value was limited to three on each side. The award was at

the rate of about $147 an acre. The witnesses for the State testified to an average value of about $80 an acre; those for claimants to $540. Claimants complain that in determining the value, proper elements were not considered, particularly the fact that the westerly parcel had over 13,000 feet of frontage upon Napeague harbor, this being, as they claim, the one place near the easterly point of Long Island available as a harbor for ocean-going steamers, should a harbor project in that vicinity be carried through. Also that prior to the appropriation they had contracted with one Carl Fisher to sell the entire tract to him at $300 an acre, he desiring it in connection with other lands for an extensive development in this vicinity. The State says the harbor plan was visionary, that there was no contract with Fisher, only an option from which he could be released by the payment of $10,000, and that if a sale was made to him, the owners would receive part payment in money, the balance to be secured by a " large mortgage." It is unquestioned that Fisher purchased from these claimants the remaining 4,000 acres at $300 an acre. The contract made with Fisher before the appropriation was offered in evidence. Its reception was objected to by the State and the objection sustained by the court. Thus if there be uncertainty as to the terms of the Fisher contract, it would have been clarified except for the State's objection. Some of the extreme claims advanced by the owners as to the value of these premises should be discounted. However, the assertion by the State's witnesses as to the lack of availability and desirability is gainsaid as the Park Commission selected this land as a park and playground for the public.

" The owner is not entitled to swell the damages beyond the fair market value of the land at the time it is taken by any consideration of the chances or probability that some time in the future it may be used for some purpose to which it is adapted unless it appears that the market value of the property is enhanced by the chances or probability. As was stated in *Moulton* v. *Newburyport Water Co.* (137 Mass. 163): 'If there were different customers who were ready to give more for the land on account of this chance, or if there were any other circumstances affecting the price which it would bring upon a fair sale in the market, these elements would necessarily be considered by the jury, or by a witness, in forming an opinion of the market value.' But the mere hopes of an owner that his property may at some future time be required for a reservoir or storage basin for supplying the city of New York or any other city with water cannot be considered unless the probability of such an event in the public mind had in fact affected the fair market value at the time it was taken." (*Matter of Simmons*

[*Ashokan Reservoir, Sec. No. 6*], 130 App. Div. 350, 352; affd., without opinion, 195 N. Y. 573.) It is the duty of the court to take into consideration "all available uses and purposes" to which the land may be devoted in determining the fair market value. (*United States* v. *Chandler-Dunbar Co.*, 229 U. S. 53, 81.) I believe that the claimants' property had a value of at least $300 per acre.

Interest was allowed only to March 21, 1927, because of a stipulation made by claimants' attorneys in connection with an application for an order staying the Attorney-General from proceeding in this matter before the Court of Claims. An action had been commenced by these claimants to prevent the State from making the appropriation of this land. The complaint was dismissed at the Trial Term. This decision was reversed in the Appellate Division (*Flagg* v. *Moses*, 222 App. Div. 762). The decision of the Appellate Division was affirmed by the Court of Appeals (248 N. Y. 509). Upon the trial after the two appeals, the plaintiffs were unsuccessful, and the judgment dismissing their complaint was unanimously affirmed by the Appellate Division (225 App. Div. 887). During the continuance and pendency of this action and the appeals, the application for a stay was made and, as is recited in the stipulation, the judge at Special Term required as a condition for the granting of the stay that the claimants stipulate that interest should not accrue after the date mentioned. The order granting the stay at the Special Term upon that stipulation was reversed by the Appellate Division (*Fowler* v. *Ottinger*, 221 App. Div. 677). The stipulation was made on condition that there be a stay. The stay having been denied on appeal, the effect of the stipulation should terminate. The award should carry interest to the date of the judgment.

The decision of the Court of Claims should be modified by increasing the award to $300 an acre, with interest computed from the date of the appropriation August 15, 1924, until the entry of the judgment hereon.

All concur, except VAN KIRK, P. J., and HINMAN, J., who dissent and vote for reversal and a new trial.

The judgment of the Court of Claims is modified to direct that claimants shall recover against the State of New York $533,122.80, together with interest thereon from the 15th day of August, 1924, to the date of the entry of the judgment hereon.

Findings of fact numbered 8, 9 and 10 contained in the decision, and findings numbered 10 contained in the State's requests to find, together with all findings of fact in the conclusions of law

numbered 3 and 4 of the decision, are reversed and a new finding is made that the lands and premises appropriated by the State and mentioned and described in the judgment herein amounting to 1,777.076 acres are of the average value of $300 per acre. That claimants are entitled to recover such amount from the State, with interest thereon computed from the 15th day of August, 1924, the date of the appropriation, to the date of the entry of the judgment hereon.