RAY F. DILLENBECK et al., Claimants, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 27865.)

Court of Claims, October 23, 1948.

*Donald W. Kramer* and *William E. Night* for claimants.

*Nathaniel L. Goldstein, Attorney-General (James G. Austin* of counsel), for defendant.

LAMBIASE, J. Claimants are husband and wife and on the 10th day of February, 1944, the date of the appropriation of the easement hereinafter mentioned, were and for some years previous thereto had been the owners in fee, as tenants by the entirety, of a parcel of land situate in the town of Willet, county of Cortland, and State of New York, more particularly described in a copy of a map and description filed in the County Clerk's Office of the County of Cortland, New York, on the 18th day of January, 1944.

On February 10, 1944, by a notice of appropriation dated the 21st day of January, 1944, duly served upon claimants, and pursuant to the provisions of chapter 862 of the Laws of 1936 and acts amendatory thereof, and other applicable laws of the State of New York, the State of New York, through its Superintendent of Public Works, entered upon, took possession of, and appropriated '' A perpetual easement for the right to overflow or flood as may be necessary in connection with the construction, maintenance, and operation of the Whitney Point Dam and Reservoir; together with the right to enter upon said property from time to time as occasion may require, and remove therefrom natural or artificial structures or obstructions which, in the opinion of the Superintendent of Public Works, or his authorized representatives acting for the People of the State of New York, and/or its assigns, may be detrimental to said construction, operation and maintenance of the dam and reservoir, in and to and within the bounds '' of said parcel of land belonging to the claimants, and more particularly described in the map and description attached to the notice of appropriation herein. By the provisions and terms of said appropriation

there is reserved "to the fee owners, but at their own risk, the right and privilege of using their property providing the exercise of such right and privilege does not interfere with or prevent the use and rights hereinabove described, and providing further that no structures are to be erected on this parcel unless first approved by the owner of this easement."

Claimant, Ray F. Dillenbeck, is a florist, owning greenhouses and conducting his business at Whitney Point, New York, which is approximately nine miles from the property involved in this appropriation. In his business he uses quantities of peat, and it was for that reason, he testified, that, after having caused the land concerned herein to be examined and investigated, and having thereby determined that there was a peat bog or deposit of some 30,000 cubic yards located therein, he and his wife purchased it, paying $100 therefor.

It is uncontradicted that, as of the time of the appropriation, the fair market value of claimants' land, which is the subject of this appropriation, was the sum of $100 without assigning any special value to the deposit of peat. The State asserts that under the circumstances herein that amount is the maximum sum which may be awarded to claimants by reason of the appropriation by the State of the afore-mentioned easement, that being the total fair market value of the land upon which the easement is imposed. On the other hand, claimants contend that their land had, at the time of the appropriation, a fair market value of $40,000, maintaining that they have not only established the presence of a deposit of peat on said property, but also the fact that they can extract and market the peat commercially at a profit. For this reason they urge that their land had, at the time of the appropriation, this enhanced market value which they ask be awarded them as their damages herein.

It is the contention of the State that the market value of $40,000 testified to by claimants' expert is predicated upon conjecture and speculation; that there is no basis in the evidence for such valuation; that the reservation in favor of claimants contained in the easement taken by the State saves to the claimants herein the right to make use of said premises during the life of said easement provided said use is in accordance with the conditions in the easement set forth; that the use to which said property is to be put by the State of New York under said easement is such that it will not interfere with the planned use of the property by the claimants in the extraction of peat since no structures are contemplated under the plan outlined in claimants' evidence to extract the same, and that

claimants' land is of such a nature that it would not permit the building thereon of any sizable structure or structures.

It is the position of the claimants herein that their land is only of slight value when considered apart from the peat bog or deposit located on it; that by virtue of the easement they are and will be prevented from extracting the peat; that the easement, being perpetual and so broad and exclusive, they have been deprived of their property for all practical purposes; and that the very imposition of the easement destroys the market for the land irrespective of whether or not the land ever were flooded.

Whether the imposition of this easement deprives the claimants of all of the value which inheres in their lands and leaves them with nothing but a naked legal title, we feel is to be determined by us as a question of fact and not as a question of law. (*Karlson* v. *United States,* 82 F. 2d 330, 336.)

The easement imposed by the appropriation herein is not one for a definite period. On the contrary, it is perpetual. The rights acquired by the State thereby are permanent in nature, and because of their very nature, the possibilities of their abandonment by the State because of nonuser is so remote and improbable as not to be taken into consideration. The right created by the easement " to overflow or flood as may be necessary " claimants' land will require, should the occasion arise, the exclusive use of said land. The State has the unquestioned right to occupy the whole of claimants' land and to exclude the claimants therefrom entirely at any time that the exigencies of the situation may demand such occupancy. The easement herein, we conclude, is so large as to preclude, from a practical point of view, the ordinary use of the property by the claimants herein, and leaves to them only the name of owners. (*Matter of Water Comrs. of Amsterdam,* 96 N. Y. 351, 361.) The uncertainty as to when the occasion may arise for the exercise of the State's rights under the easement does not taint our conclusion with speculation. (*Cooper* v. *State of New York,* 48 N. Y. S. 2d 212.)

We find no merit to the State's contention that the exercise of the rights of the State under said easement will not interfere with the claimants' plan, as detailed in the evidence, for their use of said property. Such rights and privileges as are reserved to claimants in their land and such use which claimants may make of the same, burdened by said easement, are merely permissive, and subject to the paramount right of revocation by the State. In short, the interest of the claimants in the prop-

erty affected by the easement has been reduced to that of a servient estate subject to the dominant rights of the State.

While it is true that the appropriation herein is for an easement only, and that the fee to claimants' land remains in them, yet this distinction, in view of the extent and of the effect of said easement, has no practical application herein, insofar as is concerned the determination of damages to be assessed against the State by reason thereof. We see no substantial difference in value of which the law will take notice between the easement and the fee. The value of the fee of claimants' land, burdened by such an easement is presumptively, at least, only nominal as is that of the reservation in favor of claimants, and there is nothing in the case, in our opinion, to overcome that presumption and to indicate any greater value. Under the circumstances, therefore, it seems to us that in order to satisfy the constitutional requirement for " just compensation ", the award herein must represent the fair market value of claimants' land at the time of the appropriation; and the aforesaid reservation in favor of and the fee remaining in claimants cannot be availed of by the State to diminish the amount of claimants' claim by any amount greater than a nominal sum. Claimants' fee, burdened as it is with the easement, " is a naked, unproductive fee, useless, bereft of enjoyment and incapable of pecuniary advantage, and the owners are entitled to no more than a nominal award. *Matter of City of New York, Braddock Ave.*, 278 N. Y. 163, 15 N. E. 2d 563; *Matter of City of New York, 43rd Avenue, Borough of Queens*, 282 N. Y. 42, 24 N. E. 2d 841; *Matter of City of New York [In re Decatur St. in City of New York]*, 196 N. Y. 286, 89 N. E. 829, 37 L. R. A., N. S., 281." (*Cossey* v. *State of New York*, 43 N. Y. S. 2d 908, 909.) There remains, therefore, but for us to determine the amount in which claimants have been damaged by the appropriation herein, and we now pass to a consideration of that question.

Claimants are entitled to the fair market value of their land for its highest and best available use. (*United States* v. *Miller*, 317 U. S. 369. See, also, *United States ex rel. Tenn. Valley Authority* v. *Powelson*, 319 U. S. 266; *Olson* v. *United States*, 292 U. S. 246; *Matter of Bd. of Water Supply of City of N. Y.*, 277 N. Y. 452; *Matter of City of Rochester*, 234 App. Div. 583.) They are not limited in compensation to the condition which the property is in at the time or to the use which they are then making of it, but are entitled to recover the fair market value of their property based on the most advantageous use to which it could be put. (*Sparkhill Realty Corp.* v. *State of New York*,

254 App. Div. 78, affd. 279 N. Y. 656, same case 268 N. Y. 192; *Matter of Daly v. Smith,* 18 App. Div. 194; *Matter of Simmons,* 130 App. Div. 350, 352, affd. 195 N. Y. 573, affd. *sub nom. McGovern v. City of New York,* 229 U. S. 363; *New York Central R. R. Co. v. Maloney,* 234 N. Y. 208; *United States v. Chandler-Dunbar Water Power Co.,* 229 U. S. 53; *Fowler v. State of New York,* 192 Misc. 15; *Maure v. State of New York,* 234 App. Div. 166; *Matter of Bronx Parkway Comm.,* 191 App. Div. 212.) As bearing upon the question of market value, an owner is privileged to offer evidence as to deposits of certain materials located on his land which might tend to enhance the market value beyond the purposes for which the same was used. (*New York Central R. R. Co. v. Maloney,* 234 N. Y. 208, 218, *supra.*) But the mere adaptability of the land to a proposed and previously untried use is an insufficient consideration as a guide in the judicial ascertainment of value. It is only when it is shown that it has a market value for some particular use that the availability and adaptability of the property to the use can be taken into account in determining its fair market value. The factor to be considered is whether purchasers can be procured for such purpose. Otherwise, such evidence is in excess of the rule of the measure of damage properly applicable to a case like the present one, and the values sought to be established are purely speculative and hypothetical. (*New York Central R. R. Co. v. Maloney, supra;* *People ex rel. Strong v. Hart,* 216 N. Y. 513; *Daly v. Smith, supra; Graham v. State of New York,* 51 N. Y. S. 2d 437.)

"The owner is not entitled to swell the damages beyond the fair market value of the land at the time it is taken by any consideration of the chances or probability that sometime in the future it may be used for some purpose to which it is adapted unless it appears that the market value of the property is enhanced by the chances or probability. As was stated in *Moulton v. Newburyport Water Co.* (137 Mass. 163): ' If there were different customers who were ready to give more for the land on account of the chances, or if there were any other circumstances affecting the price which it would bring upon a fair sale in the market, these elements would necessarily be considered by the jury, or by a witness, in forming an opinion of the market value.' " (*Matter of Simmons, supra,* pp. 352–353.)

At the time of the appropriation claimants' property concededly had little market value apart from any such value as might be established because of the deposit of peat. Claimant's

alleged market value of said property is based upon their contention that it contains said deposit of peat which they contend forms the basis of a profitable business. (*Sparkhill Realty Corp.* v. *State of New York,* 254 App. Div. 78, affd. 279 N. Y. 656; same case 268 N. Y. 192, *supra.*) We are thus brought to a consideration of the theory upon which claimants make their claim of enhanced value, and we turn to the record to determine, if we can, the basis of their contention. To discuss in detail the evidence in the record on this point would extend the length of this opinion beyond reasonable limits. We shall, therefore, but briefly refer to it.

At the time of its purchase by the claimants, the land affected by the easement herein was idle, unimproved and unprofitable. Claimants assert that they purchased it solely because of the deposit of peat located thereon. However, except for a small quantity of peat excavated by claimants by hand shovel in 1940, 1,200 to 1,500 pounds of which were marketed in 1940 and 1941, and, except for 200 cubic yards thereof excavated for claimants by a contractor in 1941, and taken to claimant Ray F. Dillenbeck's place of business and used by him in the conduct of his business, the land at the time of the appropriation herein remained in practically the same condition as when acquired by claimants. No peat excavated from the land affected herein had been, up to the time of the trial herein, commercially marketed by claimants since 1940 or 1941, and none of such peat had been used up to that time by claimant, Ray F. Dillenbeck, in his business since 1941. The land had produced neither peat nor income at any time except as we have hereinbefore noted. Furthermore, claimants, up to the time of the trial herein, had done nothing in the development or in the exploitation of the peat deposit, and had spent no money thereon except for the cost of excavating the aforesaid quantities of peat.

Claimants asked a hypothetical question of their expert on the question of value, in reply to which he stated it to be his opinion that the fair and reasonable market value of claimants' land, as of the date of the appropriation of the easement, was $40,000. In support of their theory of market value herein claimants offered a considerable amount of evidence relative to methods and costs of excavating and producing the peat under the physical conditions prevailing on their land and of preparing, packaging and marketing the same. Evidence was also adduced by claimants of contemplated sale price and of possible markets for the absorption of the peat when excavated, and of other computations as to costs incident to the several

operations and steps required to place the peat in the hands of the ultimate users thereof. All of the foregoing were elements which were considered by claimants' expert on value in arriving at his conclusion as to market value. Furthermore, claimants' expert testified that he had assumed in his computations that claimants would consume ten years in excavating the entire deposit of peat. It was frankly admitted by claimants' expert on value that any change in any of his assumptions would make a difference in his final figures, even to the extent, depending of course, upon the nature and extent of such change or changes, of possibly changing from a profitable to an unprofitable one, the operation of excavating the peat.

It seems to us that although the hypothetical question put to claimants' expert on value in the end called for testimony in the guise of an opinion as to market value, it could have been and was answered only on the fixed assumption that the peat deposit on claimants' property was to be profitably operated as a peat business for the period of ten years assumed by him in his computations. There was no concrete proof of costs, of conditions, and of a market stabilized over the period of time assumed by claimants' proof. Many factors established by the evidence affecting the use of peat commercially, and, of course, bearing upon its market value were obviously ignored in claimants' computations, and no attention was given the many other considerations necessarily involved in and commonly known to be attendant upon business operations such as were contemplated herein. All claimants did herein was to compute mathematically the expected transaction of business in the future and the possible future profits resulting therefrom, although up to the time of such computations claimants had done no business and had made no profit. " This procedure in itself proved nothing. As long ago it was said of similar testimony, ' All the witness has done, is to establish by calculation, that such a stock, from such a time, will produce so much. He does not himself prove any fact, and the calculations he has made must therefore depend upon the facts which are proved by others.' * * * The hypothetical question, although in the end it called for testimony in the guise of opinions as to market value, could have been answered only on the fixed assumption that the property of the claimants was to have been operated for a generation at an annual profit of half a million dollars." (*Sparkhill Realty Corp.* v. *State of New York,* 268 N. Y. 192, 196, same case 254 App. Div. 78, affd. 279 N. Y. 656, *supra.*) Concededly claimants' expert did not testify from knowledge as to the value of the peat. He

had never known of a peat deposit being sold; and he didn't know the market value per acre of a peat deposit. He explained that sales thereof were so rare that there was absolutely nothing with reference thereto in the literature of the appraisal business.

While we do not say that one valid expert opinion may not be based on another, yet, opinion testimony may not be predicated of a " sequence of conjectures ". In our opinion there are too many elements entering into the conclusions of claimants' expert on value which are hypothesized profit factors having no reality (*Sparkhill Realty Corp.* v. *State of New York, supra,* pp. 196, 197), and, consequently, the value sought to be established by claimants was purely speculative and hypothetical and cannot be considered as a guide for a judicial determination of the market value herein. " There was here no element of business good will, of going plant value, or of profit automatically pro-- duced by the property itself. * * * This quarry had never been worked. Before the taking, a willing buyer could have acquired at best an unfinished plant and the opportunity to operate it after completion. To the full market value of that privilege the claimants were entitled, but to nothing more." (*Sparkhill Realty Corp.* v. *State of New York,* 268 N. Y. 192, 197, same case 254 App. Div. 78, affd. 279 N. Y. 656, *supra.*) What then is the measure of compensation to be applied herein?

Undoubtedly it may be said that exceptional circumstances exist in this case. The property, which is the subject of this litigation — an unimproved parcel of land with a deposit of peat thereon — is not the subject of barter and sale in any general market, and obviously its value is not to be determined upon evidence relevant in cases involving residence, business, or similar property. Fair value in this instance, neither being under duress, is the sum of money a willing purchaser of such a parcel of land with its deposit of peat would pay and a willing seller would accept (*Sparkhill Realty Corp.* v. *State of New York,* 254 App. Div. 78, affd. 279 N. Y. 656, same case 268 N. Y. 192, *supra*); and the question herein is not merely whether the property is peculiarly adapted for the special use claimed for it even with the said peat deposit to which we have referred herein, but whether or not purchasers can be found who would pay more for it because of the adaptability to the use to which the same might be applied. (*New York Central R. R. Co.* v. *Maloney,* 234 N. Y. 208, *supra.*)

We are satisfied that the market value of claimants' property was not increased or enhanced by reason of any adaptability or

availability for a special purpose, to wit, the profitable marketing of peat commercially, by reason of the presence thereon of said peat deposit. There is no evidence that any demand existed for the property with such peat deposit, or that any customer would have given more for it because of such deposit prior to the time of the appropriation herein. There is no proof in the record that claimants' property, affected by the easement herein, had a market value at the time of the appropriation in excess of the sum of $100. Furthermore, we have concluded that it would be unprofitable for claimants to work or to exploit the peat deposit on their land in the manner described in their evidence. Additional support is found for this conclusion in the fact that claimants did nothing in a substantial way to work the deposit of the peat *between the date of their acquisition thereof in 1940, and the date of the appropriation herein in 1944*. Had the excavation of peat on claimants' land indeed been a profitable operation, it is difficult to understand why operations were not carried on *during said years preceding the appropriation of the easement*. (*Orleans County Quarry Co.* v. *State of New York*, 172 App. Div. 863, decision amended 173 App. Div. 990.) In view of all that we have discussed herein, we hold that as of the time of the appropriation the fair market value of claimants' land together with its deposit of peat thereon was the sum of $100.

In accordance with what we have hereinbefore said as to (1) the value of claimants' title burdened with the easement herein and (2) the value of the reservation contained in said easement in favor of the claimants, we find a nominal value of $1 in each instance (*Cossey* v. *State of New York*, 43 N. Y. S. 2d 908, *supra; Matter of Sixteenth Street*, 142 N. Y. S. 376; *Berney* v. *Adriance*, 157 App. Div. 628), by reason of which the award herein to claimants must be for the sum of $98, which amount, with appropriate interest, we are awarding in an accompanying decision.

We deny the motion "to strike out all testimony concerning the value of peat deposit, all testimony concerning costs and selling prices of material described as peat deposit, upon the ground that it is not the proper measure of damage and that the description of the easement taken does not include the peat deposit, that it is not a part of the appropriated property, that the only appropriation or the only interest in the property which is appropriated is an easement to flow the property with flood waters; the taking out or marketing of the peat deposit is not hindered and it affirmatively appears would not in any way

either increase cost or prohibit operation of removing of the peat as planned by the claimant. Therefore, any testimony regarding the costs and values of the peat deposit itself would be immaterial ", made by the State at the end of the claimants' case and also at the end of the entire case, and we reserve an exception to the State in each instance.