Charles Lambíase, J.
This is an application by the plaintiff for an order confirming the report of the Commissioners of Appraisal herein appointed to ascertain the compensation to be made to the defendant for the property taken by the plaintiff herein for public use as specified in the petition, which said report was filed in the office of the Clerk of the County of Monroe, *438 New York, on the 6th day of September, 1961, and for a final order herein, and for such other and further relief as may be proper.
It appears that pursuant to the petition, and order of the court dated December 21, 1959, which order was entered December 31, 1959, the Town of Pittsford, New York, condemned a perpetual sanitary sewer easement 20 feet in width and approximately 1,150 feet in length over lands of the defendant, there appearing in reference thereto in the petition the following: “ That the property sought to be condemned for purpose of acquiring perpetual right-of-way easement and privileges is located in the Town of Pittsford, County of Monroe and State of New York ”,
Then there follows a detailed description of the property by metes and bounds. And in paragraph ‘ ‘ third ’ ’ it is stated that: “ The public use for which the property is required is to enable sewerage to be carried through sewer pipes from adjacent proposed residential area along the line of the easement to connect into the main trunk sewer on East Street and to be carried from there to the sewage disposal plant. That the proposed easement and the pipes to be laid therein, is part of a master plan of sewage disposal heretofore previously ratified and approved by the Town Board. That the population of the territory in the immediate area of the proposed easement is increasing and the development of new homes in this particular area and to the south and east necessitates such a plan as the only efficient way of getting rid of effluent other than by septic tanks, the use of which is against established policy of the Town Board of the Town of Pittsford.”
In addition to the immediately foregoing, the petition sets forth and the order entered thereupon provides: “ there shall be a temporary right and privilege during construction to enter upon and use the surface of an additional two strips of land, ten feet in width, adjacent to and on both sides of the above described permanent easement.”
Defendant’s lands affected by the easements taken consist of 13 % acres fronting on the west side of East Street and located entirely within a Residential “ A” Zone. The experts of the parties are in accord that the highest and best use of the affected parcel is for subdivision for development as residential property.
Defendant maintains that by virtue of the easements herein, both permanent and temporary, his lands are in effect incumbered by a 40-foot wide permanent easement, no part of which can be used by defendant or subsequent owners for any purposes inconsistent with the rights taken by the easements; that if he *439 were to use any part of the 40-foot strip for other than transitory purposes, he would be doing so at his own risk; and that he has, in fact, lost practically the complete use of said 40-foot strip particularly in view of the highest and best use of the parcel affected by the plaintiff’s partial taking.
Defendant’s contention is that neither the petition, nor- the order herein, limits the period of construction during which the plaintiff may enter upon and use the surface of the additional strips allegedly taken on a temporary basis. He urges that under the temporary easement taken plaintiff has acquired the right and privilege to use the 10-foot temporary easement on either side of the permanent easement during any future constructions; that, except that it will be used for sewer purposes, the type and the extent of the construction contemplated by the petition has not been described in detail therein; and that plaintiff’s attempt by testimony to establish that the temporary taking or privilege is for two years cannot alter the clear meaning of the petition and order which he construes as hereinbefore set forth.
Plaintiff, on the other hand, takes the position that a permanent sanitary sewer easement 20 feet in width and approximately 1,150 feet in length has been acquired herein together with the temporary right and privilege to enter upon and to use an additional 10-foot strip on either side of the permanent taking, said temporary taking being, however, only for, and during the period of the original sewer construction and for, and during an additional period of one year from the date of the final acceptance by the plaintiff of the original sewer construction Avork, during which period of one year the contractor had the right to make any necessary repairs to the seAver; that the final acceptance of the work was on August 15, 1960; that the contractor, therefore, had until August 15, 1961; and that the temporary easement terminated on that date. It does not appear that, at any time prior to the hearings before the Commissioners, defendant had been notified of the alleged termination date of the so-called temporary easement.
The Toavu of Pittsford, New York, may make to the fullest extent such use of the appropriated parcels, both permanent and temporary, as it is authorized to make under the proAdsions of the taking. (Spinner v. State of New York, 4 A D 2d 987, 988; Dillenbeck v. State of New York, 193 Misc. 542, affd. 275 App. Div. 871; Robinson v. State of New York, 3 A D 2d 326; Morton v. State of New York, 8 A D 2d 49.)
No right to use the land taken for the permanent easement appears to have been reserved to the defendant, the ovmer of such land, by the terms of the taking. Plaintiff concedes that: *440 “You can’t build a house on it. You can’t build a barn on it. Any permanent structure you couldn’t build within the area of the 20 foot easement.” Assuming arguendo and for that purpose only that the language just quoted may be implied and that by implication there is reserved to the defendant owner the right and - privilege of using his property, thus burdened with the permanent easement, provided the exercise of such right and privilege does not interfere with or prevent the user and rights condemned by the Town of Pittsford, New York, such right and privilege thus reserved to the defendant has only a nominal value. (Matter of Water Comrs., 96 N. Y. 351, 361; Dillenbeck v. State of New York, supra.)
The report of the Commissioners awards to the defendant the sum of $4,550 “ for the real estate herein mentioned and referred to in the petition, and all his right, title and interest therein, and an additional sum of Three hundred and thirty dollars ($330.00) for crop damage, making a total award to the defendant of Four thousand, eight hundred and eighty dollars ($4,880.00) together with interest.” (Report dated Aug. 15, 1961, p. 2.) Continuing, the report at page 3 states: “ We further report, that in determining the sum to be paid to the defendant herein as compensation for the taking of the lands and premises as hereinabove provided, we have awarded as compensation, the difference between the fair market value of the whole of the lands before taking, and the fair market value of what remains after the taking, together with all consequential damages resulting to the remaining lands, and that the award represents the entire loss and damage which the owner of the property affected has suffered ’ ’.
The nature and extent of the easements, both permanent and temporary, for which compensation is being awarded are not specified and described in the Commissioners’ report so that the extent of the burden of the servient estate can be ascertained and what rights, if any, are reserved to the owner of the fee as to each of the appropriations. Specifically, the report should make definite what rights, if any, are left to the defendant to use the covered surface of the appropriated easements for cultivation, the erection of structures thereon or for any other purpose; and in connection with the temporary easement, the anticipated duration thereof as found by the commission and whether or not the damages awarded in connection therewith are without prejudice to any subsequent proceedings on the part of defendant for the recovery of damages which he may hereafter sustain by reason of such temporary easement should any damage arise. (Pomeroy v. State of New York, 18 Misc 2d *441 377.) There is no allocation of damages as between the taking of the permanent easement and of the temporary easement. There is no finding of value before and after in the light of the highest use found for the property by the commission, viz., its use for subdivision for residential purposes. Findings should be made in connection with the foregoing.
Obviously no satisfactory proof and determination of damage can be adduced until such questions are resolved and proper findings made and set forth in the report in connection with both easements and in the light of the highest economic use found. To award damages on any other basis, it seems to us, would be wholly unwarranted. Furthermore, the determination of such questions is necessary for they would be contemplated by a prospective purchaser for development purposes and would be weighed by him in evaluating the fair and reasonable market value of defendant’s land.
All of these matters which we have pointed out are of great importance for where part of a parcel of real estate is taken by condemnation for public use, the owner is entitled to be compensated for the value of the part taken measured by the difference between the fair market value of the entire property and that of the remainder after the needed portion has been preempted, including compensation for any damages resulting to the portion of the premises not taken, not only by reason of the taking of the property required, but also by reason of the use to which the property taken is put. (Condemnation Law, § 14; South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301; Matter of City of New York [Consolidated Gas Co.], 190 N. Y. 350; County of Erie v. Fridenberg, 221 N. Y. 389, 393; Matter of Board of Water Supply of City of N. Y., 277 N. Y. 452; Matter of City of New York [Whitlock Ave.], 278 N. Y. 276, 282; Town of Fallsburgh v. Silverman, 286 N. Y. 594; Matter of City of New York [Rockaway Beach], 288 N. Y. 75, 77.)
The damage accruing from a temporary easement is measured by the fair and reasonable rental value of the property during the easement period and shall include any loss resulting from damage to the fee arising from the user of the easement. (Spencer v. State of New York, 206 App. Div. 376, 377.)
Defendant has made claim for crop damage for which he has been allowed by the commission the sum of $330. In our opinion, the allowance of this sum as a separate item of damage is not proper under the circumstances herein. The highest economic use of the property having been found to be and concededly being for subdivision for residential development, in our opinion there can be no separate claim for damages for crop loss inas *442 much as the use found, and on which basis the property has been evaluated, contemplates property which is adaptable to and usable for suclj purpose as of the time of the taking. Such purpose assumes ahd requires a land surface free of any obstructions. The expense of preparing the land for the economic use found herein presumably is reflected in the over-all fair market value of the land in the light of such purpose, which lands, because of such purpose, have and have been given a higher market value than if evaluated for farm purposes. We agree with defendant’s real estate expert on this point in ascribing no value to such damage.
It is also claimed by defendant that a pipe carrying water from a so-called reservoir on defendant’s property was damaged and cut off during the operations in connection with the construction of the sewer. The broken water pipe was replaced, but it is claimed that despite the replacement of the pipe, the supply of water available was diminished after the sewer operations as compared with the supply available before such operations. If indeed there was a well-defined subterranean water course constituting the source of this water supply which was diverted or blocked by the appropriation and the use to which the appropriated land has been put or by the resultant sewer construction operations negligently performed for which operations, directly or indirectly, the town was responsible, such item would be a factor of damage to be considered by the procedure of establishing reasonable market value before with the water supply and such value afterward without it or in a diminished quantity. Upon this record, however, it has not been made to appear that there was a well-defined subterranean water course, and that the appropriations or negligent resultant sewer construction by the town or by anyone for whom it is responsible are the cause of the alleged diminution in the water supply. There is, therefore, a failure of proof in this regard. Furthermore, we think that this alleged damage, in the light of the highest use found and in view of the testimony of defendant’s real estate expert, is not contemplated and is, therefore, in the same category as the crop damage item.
The other items of damage urged by the defendant against the plaintiff, viz., damage to underground facilities which supply electricity for the chicken house, cost of new water pump, cost of digging a new well, loss by reason of defendant’s voluntarily lowering tenant’s rent allegedly because of the failure to furnish tenant an adequate supply of water are not sustained in the record as recoverable against the plaintiff. We agree as to these items with defendant’s real estate expert in disregarding *443 them, in his appraisal as not being contemplated in the light of the highest nse found.
In view of our conclusion hereinafter set forth, we take this opportunity to comment on the evidence based upon a theoretical subdivision testified to by defendant’s real estate expert and used by him in connection with his ascertainment of fair market value of defendant’s lands before and after and of resultant damages. In Nichols, Eminent Domain (vol. 4, § 12.3142, subd. [1]) the subject of value for potential building sites is analyzed. It seems to us that it is very pertinent. The author states concerning this question: “ It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed. * * * The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use.” (See dissenting opinion, St. Agnes Cemetery v. State of New York, 3 N Y 2d 37, 52-54.) This should be borne in mind in connection with the amended report to be filed as is hereinafter directed.
It is well established that ‘ ‘ An award will not be set aside for technical errors in the admission or exclusion of evidence, but will be permitted to stand, unless it appears that the commission adopted an erroneous principle in fixing the damages awarded to the owner, or unless the error so affected the result as to bring about an injustice to the complaining party. [Citing cases.] ” (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 587.)
We have concluded, however, that in order that the report of the Commissioners herein can be properly reviewed, it should explicitly specify and describe by appropriate findings the nature and extent of the easements, both permanent and temporary, for which compensation is being awarded, so that the extent of the burden on the servient estate can be ascertained, and what rights, if any, are reserved to the owner of the fee. Specifically, the report should make definite what rights, if any, are left to the defendant to use the covered surface of the appropriated easements for cultivation, the erection of struc *444 tures thereon or for any other purpose; and in connection with the temporary easement the anticipated duration thereof and whether the damages awarded in connection therewith are without prejudice to any subsequent proceedings on the part of the defendant for the recovery of damages which he may hereafter sustain by reason of such temporary easement should any arise. Disregarding economy of words and in the interest of clarity, we have deemed it advisable to set out matters in this paragraph which we have hereinbefore stated.
In the light of the foregoing we are constrained to conclude that the motion to confirm the report of the Commissioners herein must be denied, and we, therefore, deny the same. The matter, therefore, is remitted to the same Commissioners of Appraisal for reconsideration, including a rehearing and the taking of additional evidence, if they be so advised that the same is necessary, and for the making and filing of an amended report not inconsistent with this memorandum.
We note that the report states that the Commissioners each necessarily have spent nine days in the hearing, consideration and determination of the proceedings, and that they each ask for an allowance of $25 per day for each of said nine days. Under that part of the request for the relief set forth in the notice of motion as 1 ‘ for such other and further relief as may be proper ”, the statutory compensation of each of the Commissioners in the sum of $25 per day is allowed for the number of days set forth in the report. It does not appear that any expense has been incurred by the Commissioners according to their report. Should it be found advisable, such statutory compensation of the Commissioners may be paid as an interim payment to date, and the order to be entered hereupon may provide for such payment.