Argued December 1, 1971, affirmed January 28, petition for
review denied March 31, 1972

JUNCTION CITY WATER CONTROL DISTRICT,
*Appellant, v.* CALVERT, *Defendant* and
PATTERSON ᴇᴛ ᴜx (No. 98031), *Respondents.*
493 P2d 76

*Richard E. Miller,* Eugene, argued the cause for appellant. With him on the briefs were Miller, Moulton & Andrews, Eugene.

*H. Thomas Evans,* Eugene, argued the cause for respondents. With him on the brief were Barber & Evans, Eugene.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Plaintiff district initiated a condemnation proceeding to acquire two easements across defendants' property, which comprised 200 acres of farm land. One easement consisted of the permanent taking of 12 acres for a drainage ditch, and the other a temporary taking of 32 acres adjacent for purposes of construction. Defendant Calvert did not answer and an order of default was entered against her. Defendants James and Jessie Patterson obtained a verdict and judgment for $36,000, together with interest and an attorney's fee.

Plaintiff appeals from that judgment, assigning as error the following:

(1) Allowing the defendant James Patterson to testify as to the value of his land, and its highest and best use; and (2) failing to strike the testimony of defendants' expert witness Mariner as to 'before' and 'after' value of the land and damages thereto.

Defendant James Patterson, who, together with his wife, was the contract purchaser of the subject property, testified that the 'before' value of the property was $200,000 and the 'after' value was about $100,000. He based his 'before' value on the fact that he believed his entire tract was suitable for homesite development and felt he could have sold it for $1,000 an

acre. Mr. Patterson stated that he purchased the land in 1966 for $62,500; that improvements by renters plus esthetic value added $50,000 to $60,000 to the value of the land; that a road easement which he had purchased added another $90,000. Mr. Patterson arrived at his figure for the 'after' value by adding the total loss of 12 acres to a $300 loss an acre to the remaining 180 acres.

Mr. Mariner was one of two appraisers hired by defendants Patterson. He stated that he had engaged in appraising real property for 23 years, and that he was employed as a real estate broker and appraiser. He testified that he had approached the problem of compensation from the damage angle; that he first fixed the value of $1,200 an acre for the 45 acres along both sides of the creek which he felt were suitable for homesite development; that he considered the remainder of the land as ordinary farm land and valued it at only $400 an acre; that in response to a leading question from defendants' counsel which was not objected to, testified that in his opinion the 'before' value of the entire property was $125,600, and the 'after' value $71,200; that the taking of the easements resulted in damages of $54,400. In explaining how he arrived at his opinion he testified that because the 12 acres constituting the permanent easement were a total loss to the owner and lay in the $1,200 an acre area, this resulted in damages of $14,400. To this figure he added the following: $36,000 damages caused by the devaluation of 45 acres from $1,200 to $400 an acre; $1,000 damages caused by loss of rent of 32 acres of farm land in the temporary easement at the rate of $15 an acre; and $3,000 damages caused by the total loss of a duck pond to the permanent easement, thus arriving at his figure for total damages of $54,400.

Other value witnesses, including one called by defendants,[1] testified, as follows:

| | 'Before' value | 'After' value | Difference |
|---|---|---|---|
| Mr. Thompson | $80,000 | $67,550 | $12,450 |
| Mr. Knox | 84,000 | 76,600 | 7,400 |
| Mr. McCulley | 80,000 | 75,250 | 4,750 |

The record shows that the jury viewed the subject property.

Plaintiff contends that Mr. Patterson should not have been allowed to testify to the value and the highest and best use of his land because he did not have sufficient contact with his land nor sufficient information of relevant comparable sales to enable him to have the requisite knowledge necessary for forming a reliable opinion.

From a reading of the entire record it appears that the principal reason for the wide difference in the valuations given to the property by Patterson and Mariner and the corresponding valuations by the other value witnesses was that both Mr. Patterson and Mr. Mariner attached special value to the property for country homesites because of scenic and esthetic values of a meandering stream, bordered by shade trees, which flowed through the property. Mr. Mariner testified that these special features made the land most valuable for sale in smaller tracts to be used as homesites. He valued the balance of the land as ordinary farm land, as did the other appraisers, assigning to it a value of approximately $400 an acre. The evidence was that the ditch cut defendants' property in two, and eliminated practically all of the trees along the stream.

---

[1] Mr. Thompson was called by defendants; Mr. Knox and Mr. McCulley were called by plaintiff.

■■ It was not error to allow Mr. Patterson as contract purchaser to testify to the 'before' and 'after' value of his property and to its value at its highest and best use. *Hanns v. Friedly,* 181 Or 631, 184 P2d 855 (1947). Mr. Patterson had sufficient knowledge of the property plus its potential uses, familiarity with adjacent properties, and knowledge of the sale price of two adjacent five-acre tracts which were sold in 1970, to qualify him as a value witness in his own behalf. The weight to be accorded his testimony was a question for the jury. Cases cited by plaintiff as authority for the opposite view are distinguishable because in each case the witness was either a nonowner, or did not possess sufficient knowledge, or did not know how properly to apply the capitalization method required.

■ Plaintiff also objected to Mr. Patterson's testimony as to the value of the property at its highest and best use on the ground that it was "partially speculation and something he plans to do in the future." Mr. Patterson testified that he intended to sell the property in 40-acre tracts for subsequent sale in smaller tracts by the future purchasers. Mr. Mariner testified substantially to the same effect. There was evidence introduced on the suitability of the property for homesites and of the market for such property.

■ Prospective uses of the property may be considered in determining the present market value where the possibility of such use in the immediate future is reasonably probable and not mere speculation. *State Highway Com. v. Arnold et al,* 218 Or 43, 57, 341 P2d 1089, 343 P2d 1113 (1959).

> "It is for the jury to decide whether the prospective use is reasonably probable, assuming of course, that there is evidence upon which to base such an

inference. *United States v. Waterhouse,* 132 F2d 699 (9th Cir. 1943)." *State Highway Com. v. Arnold et al,* supra at 58.

Next we consider plaintiff's exceptions to the testimony of Mr. Mariner. Mr. Mariner testified that he had examined the property both before and after the taking, and that he had formed an opinion of its value at those times. He concurred when asked if the value he put on the property was $125,600 before the taking and $71,200 after the taking.

■ Plaintiff contends that Mr. Mariner's opinion as to value was improper because his valuation was made on a per-acre basis rather than a valuation of the property as a whole. The necessity of performing a simple mathematical calculation to arrive at the total value of the property did not make Mr. Mariner's testimony as to 'before' and 'after' values incompetent.

■ Plaintiff next contends that Mr. Mariner's testimony was incompetent because he testified directly to damages. When plaintiff objected to such testimony it was excluded. His failure to object on other occasions resulted in giving the testimony in those instances the force and effect of competent evidence. *Hanns v. Friedly,* supra.

■ Plaintiff's contention that it was improper to multiply the number of acres by the value per acre to reach the total value of the property was not raised in the trial court. Cases cited by the plaintiff in support of its position that the multiplication of a fixed amount by an estimated amount to reach total value is improper are applicable only to situations wherein such multiplication was done as part of the capitalization method of determining value and, in addition, the

capitalization method was improperly applied. *Highway Commission v. Jones*, 237 Or 372, 391 P2d 625 (1964); *Highway Commission v. Nunes et al*, 233 Or 547, 379 P2d 579 (1963). The capitalization method was not involved in the present case.

■ Lastly, plaintiff contends that Mr. Mariner's testimony as to value was incompetent because it was not based on comparable sales. Mr. Mariner's opinion of the value of the property was based on his experience in selling country property, his appraisal of the subject property, and market data information. In addition, the testimony was that he took into consideration prices paid in two recent sales of property adjacent to the subject property to substantiate his opinion. This was sufficient to qualify the witness to give his opinion as to value. The question of whether the consideration of additional factors would have led to a more accurate opinion goes to the weight to be accorded the opinion and not its competency.

Affirmed.

SCHWAB, C. J., specially concurring.

I concur in the majority opinion, but wish to note that I believe it is time to seriously reconsider the general rule that a person not otherwise qualified may testify as to the value of his own property. Whatever validity such opinions may generally have had in a past era, I think that as a rule rather than as an exception the probative value of such testimony is now highly questionable.