■ JOHN B. BELOTT, Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 39599.) — *Per Curiam.* Cross appeals from a judgment of the Court of Claims awarding to claimant damages in the sum of $23,490 resulting from the permanent appropriation of lands in the Town of Clifton Park, Saratoga County. The property involved consisted of two contiguous farms, one, the Howard farm, the right to remove whose deposits of molding sand claimant had purchased for $1,000 by agreement executed in 1941, and the other, the Tunnard farm, in which claimant had secured a similar right for the sum of $250 in 1950. The mining rights in the Howard farm extended for 12 years with options for

two additional consecutive 12-year terms and the rights in the Tunnard farm were for a term of eight years with an option for one eight-year extension. In 1959 the State appropriated 4.493 acres of the Howard farm and 2.475 acres of the Tunnard farm destroying the sand deposits estimated to have totaled 170,000 tons in those areas. In addition to his claim for damages arising from such appropriations claimant sought to recover for an asserted *de facto* taking of an additional eight acres of the Tunnard parcel occasioned by the highway contractor's excavation and removal of the sand deposits therein for use in constructing a road embankment. Claimant, testifying in his own behalf, based his evaluation of damages on his estimate of the market potential for the product and the tonnage of sand which reasonably could be expected to be mined and sold during the remaining periods of time provided by the agreements. Claimant also produced expert witnesses who, like claimant, testified to values which bore no relation to market value as that concept of value is understood in the law of eminent domain. Their estimates suggested a pretaking worth of each of the subject properties in the neighborhood of a quarter of a million dollars. On this appeal claimant asserts that he should be awarded damages of $35,640 for his interests in the lands formally taken and the additional sum of $55,350 for the *de facto* appropriation — measured solely by the profit which would have been made had he sold all of the sand at the time of the taking. The court held that the State was not liable for the *de facto* taking, a conclusion with which we agree (*Konner* v. *State of New York*, 227 N. Y. 478, 485; *Morris* v. *State of New York*, 10 A D 2d 754, 755). As to the rest of the claim the court used lower dollar figures, but employed the same improper method of valuation as that used by claimant, i.e., computing the profit claimant would have made had he sold all his sand on the day of the appropriation. Market value may, of course, be enhanced by the presence of mineral deposits in the land, but an award may not be made for materials separate from the real estate by multiplying a quantity of materials by a given price (*Matter of Huie*, 1 A D 2d 500). We recognize, of course, that in the instant case we are dealing solely with mineral rights unconnected with the value of the land as a whole. However, we perceive no reason to abandon the accepted rules of valuation on this score. Thus, while, as distinguished from the *Huie* case, we are here concerned with mineral rights as a separate entity, there remains no authority or reason for multiplying the quantity of the deposits by a given profit derived from their extraction and sale. The worth of the subject interests should be measured by their fair market value, namely, what a willing buyer would pay and a willing seller would take in an arm's length transaction for the sale of the rights. Since the landowners' claims are not joined with the instant claim we have no way of determining the worth of the sand deposits as they enhanced the serviant tenements. The business value of these rights thus remains the sole criterion for measuring damages. Such value is not to be found by the method employed by the trial court but by capitalizing the profit pursuant to well-recognized and uniformly used valuation procedures. Unquestionably a prospective buyer would not pay for these rights an amount equal to all he could ever hope to realize in business profits. He would be likely, however, to pay a price based on his appraisal of the present worth of the rights as influenced by expected profits to be realized, taking into account the various business risks which attend the particular venture (*Levin* v. *State of New York*, 13 N Y 2d 87, 90–92). Capitalizing the expected future profits is one way to appraise such reasonable present value (*Humble Oil & Refining Co.* v. *State of New York*, 12 N Y 2d 861) and in conjunction with comparable sales, if

any, a figure so derived would be legally recognizable. The State's witness attempted a market value approach, but in our view his figures are deficient for their apparent lack of recognition of the business value of the deposits. We are thus left with no alternative but reversal and remand. Judgment reversed, on the law and the facts, and a new trial ordered, without costs. Herlihy, J. P., Reynolds, Taylor, Aulisi and Staley, Jr., JJ., concur. [45 Misc 2d 1067.]