Per Curiam.
 

 The order of the Appellate Division should be reversed and the judgment of the Court of Claims, which followed a retrial in this eminent domain proceeding, should be reinstated.
 

 At the root of the issues in this proceeding is the diversity in the land and its uses in the so-called main unit of the two tracts largely devoted to a commercial dairy with an ancillary retail use and residential housing used for dairy employees. Contrary to the Appellate Division view, no inconsistency is seen in the trial court’s second decision. The remand to that court by the Appellate Division after the initial hearing turned on the award of full value for farm buildings although the trial court had valued the land for a higher nondairy use. Expressed plainly in the trial court’s later opinion is the recognition that the property was in transition between its one-time highest use as a dairy and its already revealed potential for a higher use as a commercial, industrial, and residential development. The key is that the property was in transition between changing highest uses.
 

 The trial court found "that the value of the land for commercial, industrial and residential development had not yet increased to the point where it rendered the commercial dairy plant obsolete.” Because the plant had not become obsolete, the improvements devoted to the commercial dairy retained economic value, albeit one diminished by the potential but not fully realizable commercial, industrial, and residential uses. The trial court noted, however, that as a part of
 
 *860
 
 the property, portions had been "sold * * * out” for commercial use, and that this was evidence of an "immediate demand for commercial, industrial, and residential real property at the specific location enjoyed by claimants’ property.” But the trial court did not find that all of the property of the main unit was ripe for such higher use. This is made explicit in its comment "that the dairy plant had some remaining economic life and that its value and continued operation in effect depressed the value of the land.”
 

 Thus, the trial court accommodated its estimate of value to the offsetting forces affecting this property in transition. This it did by discounting the potential value of the land, but at the same time by assigning some value to the dairy improvements which still served an economic purpose until all of the main unit, not just part of it, would realize its potential for the future higher use.
 

 As is so often the case the appraisers for both parties did not agree on the assignment of highest use for the property, or to the continuing value of the dairy improvements. But the trial court’s findings are supported by the record and are not inconsistent. Claimant’s appraiser found the highest use before the taking to be that of a commercial dairy, and therefore the dairy improvements were entitled to full value. The trial court found, as it was entitled to do, that the dairy use was obsolescent but not obsolete, and that therefore the improvements were ratable at discounted values. In parallel fashion, however, the land value, under the circumstances, could not be rated at the higher use for commercial, industrial, and residential development. Even the State’s appraiser found varying highest uses for different parts of the property and related some of the varying uses to the lag in time before "the demand for commercial use becomes great enough to offset the building values.”
 

 In doing as it did, the trial court did not violate the rule restated in
 
 Acme Theatres v State of New York
 
 (26 NY2d 385) to the effect that improvements rendered obsolete by a higher use inconsistent with the improvements disentitles the claimant to damages for the improvements (p 388). And, of course, the Appellate Division was quite correct in remanding the matter to the trial court after the first trial because there the trial court had awarded value for the land for the new higher use without discount or adjustment although that use was not
 
 *861
 
 yet realizable, and at the same time had given full value for the farm buildings (40 AD2d 578).
 

 In short, in its second decision, the trial court adjusted the land values because the commercial and related higher uses were not yet realizable, and also discounted the building values, noting a 15- to 20-year continuing use to the commercial dairy at the time of the taking until the higher potential of the land would be attained. The reference to immediate demand and sales of parts of the property for commercial use related only to a part of the property and not to the whole. Hence, there was no inconsistency.
 

 The confusion has been caused by the diversity of the main unit and the transitional condition of the property with respect to its highest use. Thus, both land value for the future highest use and the building values for a use that was obsolescent, but not yet obsolete, had to be adjusted. This the trial court did and there is no inconsistency in doing so or in referring to a portion of the land already, having reached its new highest use, so long as the building values were not assigned to parcels which had attained the new highest use. True, the building values fixed after the first trial were increased after the second trial, but this the trial court justified by stating that on the first trial it had no evidentiary basis for discounting the land values. Hence, it appears that it valued the buildings in the first trial lower to bear the brunt of the obsolescence of the commercial dairy.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of the Court of Claims rendered after the second trial should be reinstated.
 

 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur in
 
 Per Curiam
 
 opinion; Judge Gabrielli taking no part.
 

 Order reversed, with costs, and the judgment of the Court of Claims, entered June 12, 1973, reinstated.