[888 NYS2d 525]

In the Matter of WEST BUSHWICK URBAN RENEWAL AREA, PHASE 2. GEORGE CHO et al., Appellants; CITY OF NEW YORK, Respondent.

Second Department, October 20, 2009

### APPEARANCES OF COUNSEL

*Goldstein, Goldstein, Rikon & Gottlieb, P.C.*, New York City (*Jonathan Houghton* of counsel), for appellants.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Lisa Bova-Hiatt, Fred Kolikoff* and *Brooke Zacker* of counsel), for respondent.

### OPINION OF THE COURT

DICKERSON, J.

In this case, we consider whether the claimants, each of whose real property was acquired by the condemnor, City of New York, are entitled to compensation for certain trade fixtures located on their property. We hold that, where, as here, trade fixtures are inconsistent with the highest and best use of the property that is the subject of the taking, claimants are not entitled to compensation for both the property in its highest and best use and the trade fixtures which are inconsistent therewith.

## The Taking

The claimant George Cho was the owner of 73 Melrose Street in Brooklyn. The claimant Jimmy Yan Yun Chen, doing business as T&J Services, was the owner of 90 Beaver Street in Brooklyn. On February 28, 2005, the condemnor, City of New York, acquired these two properties as part of its West Bushwick Urban Renewal project. At the time when title to the real property vested in the City, Cho's lot was vacant. Chen's was improved with a one-story industrial building.

## The Trade Fixtures

Shortly after title vested in the City, the claimants filed separate notices to recover compensation for the taking of their

property. In addition to seeking compensation for the taking of the real property itself, they also sought compensation for the trade fixtures located thereupon. Each claimant provided a schedule of fixtures appropriated, which primarily consisted of fencing, gating, paving, curb cuts, and a sidewalk for a parking lot.[1] The City offered the claimants an advance payment on their trade fixture claims. The City offered Cho the sum of $8,560, and offered Chen the sum of $13,424.

## Highest And Best Use

The parties exchanged fee appraisals. The appraisers for each of the three parties agreed that the highest and best use of the properties was mixed commercial and residential use. Cho's appraiser, Daniel P. Lane & Associates, Inc., stated that "[t]he property is situated in a low and mid-rise residential area along a commercial thoroughfare; therefore, the highest and best use would be for mixed residential/commercial use." Chen's appraiser, Albert Valuation Group New York, Inc., stated that

> "[o]wing to the increased demand for quality residential and retail space in the area, the lawful development of a mixed-use residential/commercial building is justifiable. It is concluded that, as of the appraisal date, the highest and best use of the subject property, as though vacant, is for the development of the vacant site for a lawful mixed residential /commercial use."

The City's appraiser, Michael Haberman Associates, Inc., stated that "[i]n this case, we believe residential/commercial development would provide the highest return to the land. As a result of this analysis, we have concluded that the highest and best use of the Subject site, as vacant and available for development, would be for residential/commercial development." It is undisputed that the development of the properties in this fashion would require that the subject trade fixtures be removed.

---

**1.** Claimant Cho sought compensation, inter alia, for item Nos.121 ("Chain link fencing and gate"), 122 ("chain link fencing"), 123 ("One, double leaf access gate"), 124 ("2,500± SF, 4"T concrete reinforced paving"), 125 ("200± SF, 6"T concrete sidewalk installation") and 126 ("One, curb cut with gutters"). Claimant Chen sought compensation for item Nos. 1 ("One, custom folding double leaf access gate"), 2 ("One, custom folding double leaf access gate"), 3 ("130± LF, heavy gauge steel corrugated sheet fencing"), 4 ("2,895± SF, paved asphalt surface"), 5 ("2,895± SF, surface preparation grading"), 6 ("One, curb cut with dropped apron"),7 ("Painting of parking stalls") and 8 ("One, cold water station").

The City's Motion to Dismiss

The City separately moved to dismiss each of the claimant's claims for compensation for trade fixtures. In support of each of its motions, the City submitted an order dated March 28, 2007, from an unrelated case in which the Supreme Court, New York County (DeGrasse, J.), dismissed a claimant's claim for compensation for trade fixtures;[2] Cho and Chen's respective notices of claim for compensation for the property and the trade fixtures located thereon; Cho and Chen's respective appraisal reports; and the City's appraisal report.

In an affirmation in support of the motions, the City argued that the claimants' claims for compensation for trade fixtures should be dismissed because the fixtures were inconsistent with the highest and best use of the property. It argued that it would be illogical to allow the claimants to recover an award for fixtures that would have to be destroyed in order to achieve the use contemplated by the award of damages for the taking of the land.

The Claimants' Opposition

In opposition to the City's motions, the claimants submitted the advance payment certifications. In their affirmations opposing the motions, the claimants argued that the trade fixtures the claimants installed were used as part of their respective businesses. They further contended that the City took title to these trade fixtures when it acquired the subject properties, and was therefore required to compensate the claimants for that taking. According to the claimants, prior to filing its motions to dismiss, the City was in agreement with this principle, since it made an advance payment to them for the purported full and fair value of the trade fixtures.

The claimants rejected the City's contention that the trade fixtures were not compensable because they were inconsistent

2. (*See Matter of City of New York Third Water Tunnel Shaft 30B*, index No. 403784/04, Sup Ct, NY County 2007 ["As of vesting the property was vacant land being used as a parking lot. The fixtures listed in claimant's fixture inventory consist primarily of paving, signs, fencing, lighting and a parking attendant booth. The parties' fee appraisers agree that the highest and best use of the property would be the development of a residential building. The appraisers further opine that such highest and best use would necessitate the demolition of the parking lot fixtures. The City asserts that the fixture claim should be dismissed because the items claimed as fixtures are inconsistent with the residential developments of the subject parcel"].) Citing *Kaufman v State of New York* (57 AD2d 1025 [1977]) and distinguishing *Dann v State of New York* (36 NY2d 858 [1975]), the Supreme Court granted the City's motion, dismissing the claimant's fixture claim.

with the highest and best use of the property. According to the claimants, the fact that trade fixtures did not complement the highest and best use of the property did not mean that the trade fixtures were without value. It was for this reason, the claimants asserted, that the "unit rule," which values a fee and fixtures together as a single unit, has been abolished. They claimed that the value of the fee was completely independent of the value of the trade fixtures. In this regard, they claimed that for the City to pay for the value of the trade fixtures only if those fixtures were consistent with the highest and best use of the property would be tantamount to valuing the fixtures and fee as a single unit.

The claimants distinguished cases where a claimant was only entitled to recover the value of the fee, in its highest and best use, and not any building located thereon. They noted that, in those instances, the value of the land in its highest and best use would be greater than the value of the land in its current, developed use. The claimants argued that, in those cases, the building was a detriment, as the cost of demolishing it would have to be taken into account. Therefore, in the claimants' view, to pay the fee owner for the value of the building would be tantamount to a windfall. In contrast, according to the claimants, the trade fixtures at issue here were compensable if they were used in connection with a business, intended to be permanent, and would lose substantial value if removed. They asserted that to deny them compensation for trade fixtures would deny them just compensation.

The City's Reply

In reply, the City argued that the "unit rule" had been abolished but only in the case where the fee owner and fixture owner were different parties, as in a landlord-tenant relationship. The City noted that this was not the case here. The City reiterated its earlier argument that the trade fixtures were inconsistent with the highest and best use of the properties and, therefore, the claimants' trade fixture claims should be dismissed. The City asserted that, contrary to the claimants' contention, it made no difference if the improvements on the land were trade fixtures or buildings.

The Order Appealed From

In an order dated April 17, 2008, the Supreme Court granted the City's motions to dismiss the claims for compensation for trade fixtures. The court determined that, under applicable case law, "a condemnee is not entitled to be compensated for

improvements, plus land valued on a higher basis than the use with those improvements permits, when the improvements must be demolished" (20 Misc 3d 179, 182 [2008]). The court further stated that

"[c]laimants' reliance upon *Marraro v State of New York* (12 NY2d 285 [1963]) and *City of Buffalo v Michael* (16 NY2d 88 [1965]) does not compel a contrary result, since these cases addressed the issue of the allocation of a condemnation award between the fee holder and tenants who had installed fixtures. Accordingly, although both cases discussed the 'unit rule,' neither addressed the issue of whether the owner of fixtures was entitled to be compensated for fixtures that had to be demolished in order to develop property at its highest and best use." (*Id.*)

## Discussion

"When the State takes property by eminent domain, the Constitution requires that it compensate the owner 'so that he [or she] may be put in the same relative position, insofar as this is possible, as if the taking had not occurred' " (*Matter of City of New York [Kaiser Woodcraft Corp.]*, 11 NY3d 353, 359 [2008], quoting *City of Buffalo v Clement Co.*, 28 NY2d 241, 258 [1971]). "Thus, '[a]n appropriation of land . . . is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures . . . . The value of the fixtures ought, therefore, to [be] considered in estimating the total value of the property appropriated by the State' " (*Matter of City of New York [Kaiser Woodcraft Corp.]*, 11 NY3d at 359, quoting *Jackson v State of New York*, 213 NY 34, 36 [1914]).

However, in *Matter of the Town of Hempstead (Malibu Assoc.)* (56 NY2d 1020, 1022 [1982]), the Court of Appeals stated,

"If the value of the improvements is to be considered because the property continues to be used with the improvements, then the award for the land must take into consideration that the land is burdened with that use. The condemnor may be required to pay on the basis of a highest and best use other than the actual use without improvements inconsistent with that use or on the basis of the land value in light of the actual use plus improvements. The condemnee is not, however, entitled to improvements plus land valued on a higher basis than the use with those improvements permits."

Inconsistent Improvements

◼ Thus, where the improvement is inconsistent with the highest and best use of the property, the claimant is not entitled to compensation for that improvement (*see Acme Theatres v State of New York*, 26 NY2d 385, 388-389 [1970] ["It is illogical to award damages for buildings that must be destroyed to achieve the use contemplated in the award of damages for the land"]; *Van Kleeck v State of New York*, 18 NY2d 897, 899 [1966] ["Since the property was valued on a commercial basis, no value should have been assigned to the buildings on the property, which were inconsistent with that use"]; *Matter of City of Rochester v S. C. Toth, Inc.*, 59 AD2d 1020 [1977] [reversing the Supreme Court's award for both the land, used as a laundry/dry cleaning plant, and the improvements thereon; the highest and best use was for commercial development as vacant land and the building and improvements maintained thereon contributed little to enhancing the value of the land]; *Matter of County of Nassau*, 43 AD2d 45, 51 [1973] ["Where, as here, the highest and best use is for the land to be employed for a different purpose, no substantial value can be accorded to the improvement which has to be torn down"]; *Spano v State of New York*, 22 AD2d 757 [1964] [where the highest and best use of the property was commercial, requiring the demolition of a dwelling house, garage, and workshop on the property, it was error for the Supreme Court to award anything for the value of buildings while at the same time fixing the land value for commercial usage]; *cf. Passaretti v State of New York*, 37 AD2d 1022 [1971] [holding that the existence of the building was consistent with the highest and best use found for the property, that of a medical office, and was properly valued by the trial court in the computation of the total fair market value of the subject property]).

This principle is reflected in industry practices. For example, as stated in Cho's appraisal report:

> "The highest and best use of the land (or site), if vacant and available for use, may be different from the highest and best use of the improved property. This is not true when the improvements are an appropriate use, and make a contribution to the total property value in excess of the value of the site . . . . Consequently, an appropriate highest and best use analysis should include an analysis of the site as if vacant, as improved, and as improved with an

interim use if economic conditions preclude development of the site within the foreseeable future."

Here, it is undisputed that the improvements on the claimants' properties must be removed for the highest and best use of the properties to be realized. Thus, the improvements are inconsistent with the properties' highest and best use as mixed commercial and residential properties. Accordingly, the claimants are not entitled to recover compensation for the trade fixtures.

## Buildings Versus Trade Fixtures

Contrary to the claimants' contention, there is no distinction in this analysis between improvements that are in the nature of trade fixtures and those that are buildings. In *Irv-Ceil Realty Corp. v State of New York* (43 AD2d 775, 775 [1973]), the claimant owned a parcel of land in Huntington, part of which was improved with a miniature golf course. The highest and best use of the property, which was located in a general business zone, was for "highway commercial use consonant with existing zoning." The trial court determined that the miniature golf fixtures were "fee owner underimprovements and did not enhance the value of the property for its highest and best use" (*id.* at 776). Accordingly, the trial court denied the claimant any compensation for these fixtures (*id.*). The Appellate Division, Third Department affirmed, holding that "[t]he improvements on the miniature golf course were unquestionably inconsistent with the court-determined highest and best use (pursuant to which claimant was compensated for the land) and the court properly refused to award compensation for the fixtures" (*id.*).

The claimants acknowledge that *Irv-Ceil Realty Corp. v State of New York* supports the Supreme Court's determination here and undermines their argument, but urge this Court to disregard the analysis of the Appellate Division, Third Department. We decline the claimants' invitation in this regard.

## The Unit Rule

The claimants' contention that the Supreme Court mistakenly applied the "unit rule" is without merit. Under the unit rule, real estate is to

"be valued in respect to its gross value as a single entity as if there was only one owner. There are two aspects to the unit rule: (1) there can be no separate valuation of improvements or natural attributes of the land; and (2) the manner in which the land is owned or the number of owners should not affect

the value of the land" (4-13 Nichols on Eminent Domain § 13.01 [16] [a] [2009]).

The unit rule has no application here, and the Supreme Court did not apply it. The improvements, because they are inconsistent with the properties' highest and best use, have no value for present purposes and, thus, only the land is to be valued. It is when the improvement is consistent with the highest and best use (*see Passaretti v State of New York*, 37 AD2d 1022 [1971]), where the property is a speciality (*see Matter of County of Suffolk [C. J. Van Bourgondien, Inc.]*, 47 NY2d 507 [1979]), or where the landlord owns the real property and a tenant owns the fixtures (*see Matter of Village of Port Chester*, 42 AD3d 465 [2007])—scenarios that are not involved here—that fixtures and land are to be valued separately.

Interim Use

■ The claimants' contention that the Supreme Court "failed to allow for the possibility that the subject properties' use as of the date of title vesting was merely an interim use" is improperly raised for the first time on appeal (*see e.g. Shickler v Cary*, 59 AD3d 700 [2009]). In any event, as the claimants concede, their appraisers never made such a finding in their appraisal reports.[3] The claimants argue that such a finding could be made at trial. However, the claimants' appraisers have not found that the properties' "highest and best use was its present use with conversion in the near future" (*Glenn Houle Co. v State of New York*, 73 AD2d 794, 795 [1979]). The claimants' contention that a trial court could determine that the highest and best use of the properties involves an interim use amounts to no more than pure speculation unsupported by any evidence in the record.

### Conclusion

The Supreme Court correctly granted the City's motions to dismiss the claims for compensation for trade fixtures.

Accordingly, the order is affirmed.

Mastro, J.P., Eng and Hall, JJ., concur.

Ordered that the order is affirmed, with costs.

---

**3.** Again, Cho's appraiser noted in his report that "an appropriate highest and best use analysis should include an analysis of the site as if vacant, as improved, and as improved with an interim use if economic conditions preclude development of the site within the foreseeable future." Cho's appraiser obviously rejected the third possibility, as did Chen's appraiser.