In a condemnation proceeding, the claimant appeals, as limited by its brief, on the ground of inadequacy, from so much of a judgment of the Supreme Court, Dutchess County (LaCava, J.), dated January 20, 2011, as, upon a decision of the same court entered October 14, 2010, made after a nonjury trial, awarded it the sum of only $65,000 in direct damages and $435,000 in consequential damages, and the condemnor cross- *788 appeals, as limited by its brief, on the ground of excessiveness, from so much of the same judgment as awarded the claimant consequential damages in the sum of $435,000.
Ordered that the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.
The claimant in this condemnation proceeding, Washed Aggregate Resources, Inc. (hereinafter Washed Aggregate), owned two parcels of land in the Town of Amenia. The parcels had previously been used as a sand and gravel quarry. Washed Aggregate’s owner, Dominick Peburn, who purchased the assets of Washed Aggregate approximately two months before portions of its property were condemned by Metropolitan Transportation Authority (hereinafter the MTA), intended to recommence mining the land for sand and gravel.
Washed Aggregate’s two parcels, referred to by the parties as “the northern parcel” and “the southern parcel,” respectively, were separated by a third parcel known as “the Luther parcel.” All three parcels were situated between New York State Route 22 (hereinafter Route 22) to the west and Dutchess County Route 81 (hereinafter Route 81) to the east. The southern parcel ran the full width between Routes 22 and 81 and was served by a gravel haul road connecting it to both Routes 22 and 81, which ran approximately along the length of its northern border. The northern parcel bordered Route 81 to the east, but was separated from Route 22 by a small intervening parcel. (The Luther parcel also ran the full width between Routes 22 and 81.) Nevertheless, the northern parcel had access to Route 22 via a road, apparently established by custom, which ran along a portion of its southern border and through the northern portion of the Luther parcel.
In connection with the northern extension of the Metro-North Railroad and the construction of the Metro-North Wassaic station, the MTA condemned strips along the western, i.e., Route 22, edges of both the northern and southern parcels for the purpose of extending its railroad tracks. The MTA offered Washed Aggregate the sum of $37,611 for the condemned portions of both parcels, but offered no compensation for consequential damages arising from the taking of the remaining portions of Washed Aggregate’s land. Washed Aggregate rejected the MTA’s offer, and filed a claim alleging that, as a result of the taking, it had suffered loss, inter alia, of road access to the remainder of both of its parcels and the ability to exploit the land’s gravel deposits.
The MTA commenced the instant condemnation proceeding, and Washed Aggregate’s claim was thereupon evaluated at a *789 nonjury trial, at which the primary issues were whether Washed Aggregate retained suitable access to its parcels, whether it was entitled to consequential damages, and, if so, how the value of the land, including its mineral deposits, should be assessed. The Supreme Court awarded Washed Aggregate a greater sum in direct damages than that offered by the MTA, based upon the court’s evaluations of the parties’ competing appraisals. The court also awarded Washed Aggregate consequential damages, based upon its determination that the MTA’s taking had eliminated access suitable for vehicles used in mining, which was the property’s highest and best use. However, the court awarded consequential damages based upon its assessment of the fair market value of the property, rather than, as Washed Aggregate urged, based upon the projected value of the land’s mineral resources. Washed Aggregate appeals, seeking an increase in the court’s consequential damages award, and the MTA cross-appeals, contending that no consequential damages award was warranted. On the appeal and the cross appeal, the controversy centers primarily around the methodology used to determine the value of Washed Aggregate’s land and the question of whether the MTA’s taking resulted in a compensable diminution of access to Washed Aggregate’s land.
When private property is taken for public use, the condemning authority must “compensate the owner ‘so that he may be put in the same relative position, insofar as this is possible, as if the taking had not occurred’ ” (Matter of City of New York [Kaiser Woodcraft Corp.], 11 NY3d 353, 359 [2008], quoting City of Buffalo v Clement Co., 28 NY2d 241, 258 [1971]; see 520 E. 81st St. Assoc. v State of New York, 99 NY2d 43, 47 [2002]; Matter of City of New York [Glantz], 55 NY2d 345, 351 [1982]; Rose v State of New York, 24 NY2d 80, 87 [1969]; Matter of West Bushwick Urban Renewal Area Phase 2, 69 AD3d 176, 181 [2009] ). Where, as here, there is a partial taking of the condemnee’s property, the measure of damages is the difference between the value of the whole before the taking and the value of the remainder after the taking (see Matter of Village of Dobbs Ferry v Stanley Ave. Props., Inc., 95 AD3d 1027, 1029 [2012]; Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC, 74 AD3d 804, 805 [2010] ; Coldiron Fuel Ctr., Ltd. v State of New York, 8 AD3d 779, 780 [2004]; Chemical Corp. v Town of E. Hampton, 298 AD2d 419, 420 [2002]; 627 Smith St. Corp. v Bureau of Waste Disposal of Dept. of Sanitation of City of N.Y., 289 AD2d 472, 473 [2001]). “The measure of damages must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being *790 put to such use at the time” (Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC, 74 AD3d at 805; see Matter of Rochester Urban Renewal Agency [Patchen Post], 45 NY2d 1, 8 [1978]; Keator v State of New York, 23 NY2d 337, 339 [1968]; Matter of Village of Dobbs Ferry v Stanley Ave. Props., Inc., 95 AD3d at 1029; Chemical Corp. v Town of E. Hampton, 298 AD2d at 420; 627 Smith St. Corp. v Bureau of Waste Disposal of Dept.of Sanitation of City of N.Y., 289 AD2d at 473; see also Matter of Saratoga Water Servs. v Saratoga County Water Auth., 83 NY2d 205, 213 [1994]; Arlen of Nanuet v State of New York, 26 NY2d 346, 354 [1970]; Wolfe v State of New York, 22 NY2d 292, 295 [1968]).
A property’s market value is defined as “ ‘the amount which one desiring but not compelled to purchase will pay under ordinary conditions to a seller who desires but is not compelled to sell’ ” (936 Second Ave. L.P. v Second Corporate Dev. Co., Inc., 10 NY3d 628, 632 [2008], quoting Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d 273, 277 [1975]; see W.T. Grant Co. v Srogi, 52 NY2d 496, 510 [1981]; Matter of Rochester Urban Renewal Agency [Patchen Post], 45 NY2d at 8). “[T]he purchase price set in the course of an arm’s length transaction of recent vintage, if not explained away as abnormal in any fashion, is evidence of the ‘highest rank’ to determine the true value of the property at that time” (Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d at 277, quoting Matter of F. W. Woolworth Co. v Tax Commn. of City of N.Y., 20 NY2d 561, 565 [1967]; see W.T. Grant Co. v Srogi, 52 NY2d at 511; Matter of Adler v Nassau County, 52 AD3d 506, 507 [2008]; Matter of Village of Port Chester, 42 AD3d 465, 467 [2007]; Matter of Lovett v Assessor of Town of Islip, 298 AD2d 521 [2002]; Briarcliff Assoc. v Town of Cortlandt, 272 AD2d 488, 493 [2000]; see also Matter of City of New York [Atl. Improvement Corp.], 28 NY2d 465, 472 [1971]).
“ ‘In determining an award to an owner of condemned property, the findings must either be within the range of the expert testimony or be supported by other evidence and adequately explained by the court’ ” (Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC, 74 AD3d at 805-806, quoting Matter of City of New York [Reiss], 55 NY2d 885, 886 [1982]; see Matter of Town of E. Hampton [Windmill II Affordable Hous. Project (9 Parcels)], 44 AD3d 963, 964 [2007]; Rockland Dev. Assoc. v State of New York, 15 AD3d 381, 381-382 [2005]). The assessment of the suitability of proposed comparable sales submitted in support of competing appraisals is a matter resting within the court’s sound discretion (see Matter of Metropolitan Transp. Auth., 86 *791 AD3d 314, 326 [2011]; Chase Manhattan Bank v State of New York, 103 AD2d 211, 222 [1984]; see also Chemical Corp. v Town of E. Hampton, 298 AD2d at 422-423). Likewise, “[w]here the trial court’s explanation of its award is supported by the evidence, it is entitled to deference and will not be disturbed on appeal” (Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC, 74 AD3d at 806; see Chemical Corp. v Town of E. Hampton, 298 AD2d at 423; 627 Smith St. Corp. v Bureau of Waste Disposal of Dept. of Sanitation of City of N.Y., 289 AD2d at 473-474).
While a court, in determining a property’s fair market value, should consider the effect of expected profits from planned development or exploitation of resources on the land’s value, it may not award damages based upon projected profits minus projected expenses (see Matter of City of New York [Atl. Improvement Corp.], 28 NY2d at 470; Arlen of Nanuet v State of New York, 26 NY2d at 354; Levin v State of New York, 13 NY2d 87, 89-92 [1963]; Sparkill Realty Corp. v State of New York, 268 NY 192, 196-197 [1935]; New York Cent. R.R. Co. v Maloney, 234 NY 208, 217-218 [1922]; Briarcliff Assoc. v Town of Cortlandt, 272 AD2d at 493; Matter of Pickerell v Town of Huntington, 272 AD2d 331, 332 [2000]; Belott v State of New York, 26 AD2d 749, 750 [1966]). As the Appellate Division, Third Department, has explained, “Unquestionably a prospective buyer would not pay for these rights [to extract mineral resources] an amount equal to all he could ever hope to realize in business profits. He would be likely, however, to pay a price based on his appraisal of the present worth of the rights as influenced by expected profits to be realized, taking into account the various business risks which attend the particular venture” (Belott v State of New York, 26 AD2d at 750). Similarly, “[i]t is improper to value . . . property by ‘multiplying the estimated quantity [of resources to be extracted] by a given price unit’ ” (Matter of Bell v Village of Poland, 281 AD2d 878, 878 [2001], quoting Sparks v State of New York, 39 AD2d 822, 822 [1972], affd 39 NY2d 884 [1976]; see Matter of Town of Glenville [Piotrowski], 154 AD2d 856 [1989]; Belott v State of New York, 26 AD2d at 750; Matter of Huie, 1 AD2d 500, 502 [1956]; see also New York Cent. R.R. Co. v Maloney, 234 NY at 218-219; but see Matter of NYCO Mins. v Town of Lewis, 296 AD2d 748, 751 [2002]). Instead, where condemned land contains mineral deposits or other resources, a court should look to “the ‘value of the land as enhanced by the mineral deposit’ ” to determine the property’s fair market value (Matter of Bell v Village of Poland, 281 AD2d at 878, quoting Wheatfield Props. Co. v State of New York, 55 AD2d 1040, 1040 [1977]; see Sparkill Realty Corp. v State of New York, 268 NY at *792 197; Central Dover Dev. Corp. v Town of Dover, 255 AD2d 542 [1998]; Belott v State of New York, 26 AD2d at 750; Matter of Ford [Watson Natural Stone Co.], 24 AD2d 806 [1965]; Matter of Huie, 1 AD2d at 502).
Here, the Supreme Court properly rejected the income-based analysis proffered by Washed Aggregate in favor of a sales comparison approach to determining the value of Washed Aggregate’s property (see Matter of City of New York [Atl. Improvement Corp.], 28 NY2d at 470; Arlen of Nanuet v State of New York, 26 NY2d at 354; Levin v State of New York, 13 NY2d at 89-92; Sparkill Realty Corp. v State of New York, 268 NY at 196-197; New York Cent. R.R. Co. v Maloney, 234 NY at 217-218; Briarcliff Assoc. v Town of Cortlandt, 272 AD2d at 493; Matter of Pickerell v Town of Huntington, 272 AD2d at 332; Belott v State of New York, 26 AD2d at 750). Likewise, in determining the property’s fair market value, the court providently exercised its discretion in choosing comparable sales that took into account the enhancement of value resulting from the land’s mineral deposits (see Sparkill Realty Corp. v State of New York, 268 NY at 197; Matter of Bell v Village of Poland, 281 AD2d at 878; Central Dover Dev. Corp. v Town of Dover, 255 AD2d 542 [1998]; Belott v State of New York, 26 AD2d at 750; Matter of Ford [Watson Natural Stone Co.], 24 AD2d 806 [1965]; Matter of Huie, 1 AD2d at 502). Furthermore, the court properly relied upon the sale of Washed Aggregate to Peburn since Washed Aggregate failed to demonstrate that the sale to Peburn was “abnormal” or was not an “arm’s length transaction” (Plaza Hotel Assoc. v Wellington Assoc., 37 NY2d at 277; see W.T. Grant Co. v Srogi, 52 NY2d at 511; Matter of Adler v Nassau County, 52 AD3d at 507; Matter of Village of Port Chester, 42 AD3d at 467; Matter of Lovett v Assessor of Town of Islip, 298 AD2d at 521; Briarcliff Assoc. v Town of Cortlandt, 272 AD2d at 493). Because the court’s determination of the land’s value was not only “within the range of the expert testimony” but also “supported by other evidence and adequately explained” (Matter of City of New York [Reiss], 55 NY2d at 886; see Matter of Town of E. Hampton [Windmill II Affordable Hous. Project (9 Parcels)], 44 AD3d at 964; Rockland Dev. Assoc. v State of New York, 15 AD3d at 381-382), that determination will not be disturbed by this Court (see Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC, 74 AD3d at 806; see Chemical Corp. v Town of E. Hampton, 298 AD2d at 423; 627 Smith St. Corp. v Bureau of Waste Disposal of Dept. of Sanitation of City of N.Y., 289 AD2d at 473-474).
This Court has stated that “ ‘a partial taking does not itself *793 cause a consequential loss. [Instead,] [d]amages for such a loss must be based upon either the opinion of an experienced, knowledgeable expert. . . or on actual market data showing a reduction in the value of the remainder as a result of the appropriation’ ” (Matter of Board of Commr. of Great Neck Park Dist. of Town of N Hempstead v Kings Point Hgts., LLC, 74 AD3d at 805, quoting Zappavigna v State of New York, 186 AD2d 557, 560 [1992] [citations omitted]; see Matter of Village of Dobbs Ferry v Stanley Ave. Props., Inc., 95 AD3d at 1029; Coldiron Fuel Ctr., Ltd. v State of New York, 8 AD3d at 780; Chemical Corp. v Town of E. Hampton, 298 AD2d at 422; 627 Smith St. Corp. v Bureau of Waste Disposal of Dept. of Sanitation of City of N.Y., 289 AD2d at 473; Matter of Estate of Haynes v County of Monroe, 278 AD2d 823, 824 [2000]). Whether a partial taking diminishes the value of the remaining property is a credibility issue for the trial court (see Matter of Metropolitan Transp. Auth., 86 AD3d at 325; Chemical Corp. v Town of E. Hampton, 298 AD2d at 422).
Contrary to the MTA’s contention, “damages which arise from the use of the parcel taken are entitled to consideration” (Dennison v State of New York, 22 NY2d 409, 412 [1968]; see Meyers v State of New York, 215 AD2d 357 [1995]; Matter of County of Nassau [Knightsbridge Co.], 144 AD2d 364 [1988]). Accordingly, the fact that a portion of Washed Aggregate’s damages stems from the MTA’s improvements to the condemned parcels rather than from the taking itself is no bar to Washed Aggregate’s claim for compensation. On the contrary, “if the State’s appropriation of highway-abutting land or the physical construction of the improvement itself so impairs access to the remaining property that it can no longer sustain its previous highest and best use, then the State must pay consequential damages to the owner” (Split Rock Partnership v State of New York, 275 AD2d 450, 451 [2000] [emphasis added], citing La Briola v State of New York, 36 NY2d 328, 332 [1975], send Priestly v State of New York, 23 NY2d 152 [1975]). This Court has interpreted this principle to also encompass cases where the remaining property’s highest and best use has not changed, but the diminished access limits the potential exploitation of the property for its highest and best use (see Split Rock Partnership v State of New York, 275 AD2d at 451; Matter of County of Rockland [Kohl Indus. Park Co.], 147 AD2d 478, 479 [1989]).
The Court of Appeals has made clear that, although a taking which results in access which is “merely circuitous” is not compensable, access which can be characterized as “ ‘unsuitable’ ” will support a claim for consequential damages (Priestly v State *794 of New York, 23 NY2d at 155; see Matter of County of Rockland [Kohl Indus. Park Co.], 147 AD2d at 479; Red Apple Rest. v State of New York, 27 AD2d 417, 419 [1967]). “[T]he question of suitability is a factual one directly related to the highest and best use of the property” (Priestly v State of New York, 23 NY2d at 156). Access is “suitable” where it is “adequate to the requirements of or answers the needs of’ the property’s highest and best use (Priestly v State of New York, 23 NY2d at 156; see Matter of County of Rockland [Kohl Indus. Park Co.], 147 AD2d at 479; Gluckman v State of New York, 37 AD2d 870, 871 [1971]). Whether a property’s remaining access is suitable is a question of fact to be determined by the trial court (see Gengarelly v Glen Cove Urban Renewal Agency, 69 AD2d 524, 526-527 [1979]).
Here, the parties do not dispute that the highest and best use of Washed Aggregate’s parcels was as a sand and gravel mine. Thus, the question is whether the remaining access was suitable for that use. Based upon the evidence presented at trial, the court found that there was credible evidence that, with respect to access from Route 22, the alterations to the driveway access to Washed Aggregate’s southern parcel rendered the access unsuitable for the purposes of a mining operation. It noted specifically that, because of the existence and placement of guard rails, trucks could no longer pass one another by pulling into the verge; that the grade resulted in obscured sight lines such that trucks could not safely enter the roadway because they could not judge whether another truck was approaching from the opposite direction; and that widening the roadway to accommodate two lanes of truck traffic would involve not only removing the guard rails, but also raising the surrounding land to the elevation of the roadway, which had been raised by the MTA above the grade of the surrounding land. Similarly, the court found that, prior to the taking, the northern parcel had access to Route 22 via the Luther parcel, but that the taking of portions of Washed Aggregate’s property, in combination with the construction of the railroad and railway station, eliminated the northern parcel’s access to Route 22. With respect to access from Route 81, credible evidence supported the court’s conclusion that Washed Aggregate would not be permitted to use that road for haulage and that, in any event, exploitation of the land’s mineral resources would drop the eastern border of both parcels well below the elevation of Route 81, making access from the east impossible. These factual findings are well-supported by the record (see Matter of Metropolitan Transp. Auth., 86 AD3d at 325; Chemical Corp. v Town of E. Hampton, 298 AD2d at 422; Gengarelly v Glen Cove Urban Renewal *795 Agency, 69 AD2d at 526-527). Accordingly, the court properly awarded Washed Aggregate consequential damages based upon diminished access to its property (compare Priestly v State of New York, 23 NY2d at 156-157; Matter of County of Rockland [Kohl Indus. Park Co.], 147 AD2d at 478-479; Gluckman v State of New York, 37 AD2d at 871) but, as noted above, properly did so based upon its assessment of the property’s fair market value rather than the projected value of its mineral resources. Accordingly, we decline to disturb the court’s damages award.
The MTA’s remaining contention is without merit. Dillon, J.P., Chambers, Sgroi and Miller, JJ., concur.